MacGINNISS v. BOSTON & M. CONSOL. COPPER & SILVER MIN. CO.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1902.)

No. 812.

1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—SUIT BY STOCKHOLDER.
    A suit in a state court by a stockholder of a domestic corporation, who is a citizen of the same state, against such corporation and a foreign corporation, the purpose of which is to enjoin the latter from obtaining and exercising control over the property, business, and corporate stock of the domestic corporation, does not involve a separate controversy between complainant and the foreign corporation, which gives the latter the right of removal. Such suit is necessarily based entirely upon the rights of complainant as a stockholder of the domestic corporation, and to every controversy between him and the foreign corporation involving such rights, the domestic corporation is a necessary party.

2. SAME—INCIDENTAL RELIEF AGAINST ONE DEFENDANT.
    Where the relief sought against one of several defendants is merely incidental to the principal purpose of the suit, the fact that such incidental relief pertains to one only of the defendants does not make it a separable controversy so as to give such defendant the right of removal.

3. SAME—PRAYER FOR RELIEF NOT SUPPORTED BY AVERMENTS OF BILL.
    In order to show the existence of a controversy, facts must be alleged which present a question for the determination of the court, and a prayer, inter alia, for relief against one of several defendants, does not create a separate controversy with such defendant, where there are no averments in the bill upon which such relief could be based.

4. SAME—ARRANGEMENT OF PARTIES—SUIT BY STOCKHOLDER.
    In a suit by a stockholder in a domestic corporation against such corporation and a foreign corporation to enjoin the latter from obtaining and exercising control over the property and business of the former, which the bill alleges is about to be accomplished through an illegal conspiracy between the defendants, the domestic corporation is not a

---

¶ 1. Separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Mineral Co., 35 C. C. A. 155.

party in the same interest with complainant, and cannot be aligned with him for the purpose of giving the foreign corporation the right of removal on the ground of diversity of citizenship.

Appeal from the Circuit Court of the United States for the District of Montana.

This suit was removed to the circuit court of the United States for the district of Montana from the district court of the Second judicial district of that state for the county of Silver Bow, by the Amalgamated Copper Company, upon the ground that as to that corporation the case presents a separable controversy. The suit is brought by the appellant, John Mac-Ginniss, against the Boston & Montana Consolidated Silver Mining Company, a corporation, hereinafter designated as the Boston & Montana Company, and the Amalgamated Copper Company, a corporation, and certain named persons who were the officers of said respective corporations. The complaint alleged, in substance, that the Boston & Montana Company is a corporation organized, prior to the year 1898, under the laws of Montana, for the purpose of purchasing, acquiring, holding, mining, and operating mines and mining claims in said state, and owning and operating smelters and reduction works in connection therewith, and purchasing and owning such real and personal property as might be necessary to carry on its said business; that its capital stock is 150,000 shares, of the par value of $25 per share; that it has acquired valuable mines and has engaged in profitable mining business and has paid large dividends to its stockholders; that its officers and directors claim and assert that the property, business, franchises, and rights of the said corporation are of the value of more than $56,000,000; that the appellant, the plaintiff in the suit, is a citizen and resident of Montana, and is the owner of 100 shares of the stock of said corporation, and that he brings the suit in his own behalf and for the benefit of all other stockholders who may desire to join therein; that during the year 1898 the directors and officers of said corporation, without the consent of the appellant and without right, entered into an agreement with a large number of said stockholders whereby they obtained their consent to the sale, transfer, and assignment of all the property and rights of the corporation to a corporation of like name organized and existing under the laws of the state of New York, but such transfer and delivery of possession was without right, and in violation of the rights of the stockholders who had not consented thereto, one of whom was the appellant; that the appellant purchased his stock because of its known value, and because the corporation was a Montana company, subject to the laws of that state; that in June, 1898, the appellant and James Forrester, who also owned 100 shares of such stock, commenced an action in the district court of the Second judicial district of the state of Montana in and for Silver Bow county, on their own behalf and for the benefit of other stockholders, against the said Boston & Montana Company, the New York corporation, and the officers and directors of the same, and certain other persons, as defendants, for the purpose of having said transfer and conveyance to the New York corporation declared null and void, and enjoining the latter from carrying on mining operations in said mining property, and to have a receiver appointed to take charge of said property and to compel the return of all thereof to the Montana corporation of that name; that an injunction was granted in said case, and afterwards a receiver was appointed, who took charge of the property, and upon a hearing in the supreme court of Montana, upon an appeal from the order of the district court granting the injunction, it was held that the acts complained of by the plaintiffs in said action against the corporation, its officers and trustees, were ultra vires, and it was adjudged that the Montana company had no right or authority, without the consent of all its stockholders, to transfer or dispose of all its property or assets; that thereafter all the property belonging to the Boston & Montana Company in the state of Montana was taken possession of by it, and that it thereafter continued to mine its property and conduct its business as before and to pay large dividends to its stockholders; that the purpose of the transfer to the New York corporation was to terminate

the existence of the Montana corporation, and to take away the jurisdiction of the courts of Montana, for the reason that the laws of that state were more favorable to mineral stockholders than were the laws of New York; that thereafter, for the purpose of taking the management of said property and business away from the jurisdiction of the laws and courts of Montana, the officers and a majority of the stockholders agreed together and interested themselves in procuring legislation to that end, and procured the passage of an act of the legislative assembly of the state of Montana for the purpose of enabling a transfer and giving such control and management without the consent of all the stockholders, and thereafter, and fearful that such act might be held unconstitutional, and seeking to evade the decision of the supreme court above referred to, the directors of the corporation, acting with certain other persons, and under an agreement with a majority of the stockholders, and under an agreement with certain stockholders and officers of certain other Montana corporations, organized the defendant the Amalgamated Copper Company under and by virtue of the laws of the state of New Jersey, with its principal office and place of business in that state, for the purpose of creating a trust, and controlling the production and sale of copper and other metals, and that pursuant to that purpose the Amalgamated Copper Company has purchased, and now owns and controls, either directly or through the agency of trustees, all the shares of the capital stock, except organizers' shares, in the following corporations organized under the laws of Montana, to wit, the Washoe Copper Mining Company, the Colorado Smelting & Mining Company, the Big Black Foot Milling Company, the Diamond Coal & Coke Company, the Parrot Silver & Copper Company, the Anaconda Copper Mining Company, and 10,000 shares of the capital stock of the defendant the Boston & Montana Company, and more than 90 per cent. of the capital stock of the Butte & Boston Consolidated Mining Company, a corporation organized under the laws of the state of New York, and owning numerous mines and a smelter in the state of Montana, and a majority of the capital stock of the Hennessey Mercantile Company, a corporation organized under the laws of the state of Montana, and owning valuable property therein, and carrying on a mercantile business therein; that the Amalgamated Copper Company was organized with a capital stock of $75,000,000, consisting of 750,000 shares, of the par value of $100 each; that thereafter it increased is capital stock to $155,000,000, the purpose of which increase was to enable it to trade shares for acquiring the control of a majority of the shares of the capital stock of the Boston & Montana Company and of the Butte & Boston Consolidated Mining Company, above mentioned, and to control and direct the management thereof, and to appoint or elect officers and agents who would obey the orders and directions of said Amalgamated Copper Company. The appellant alleged, upon information and belief, that the directors of the Boston & Montana Company have agreed together and with the holders of a majority of the capital stock of that corporation to transfer, assign, and set over unto the Amalgamated Copper Company three-fourths of the capital stock of the Boston & Montana Company, for the purpose of giving the control, management, and direction of its business to the said Amalgamated Copper Company, and the latter corporation has, in pursuance of said agreement, acquired and now holds more than 90 per cent. of said capital stock of the Boston & Montana Company, and the directors of said latter company have agreed and bound themselves to act with reference to all matters pertaining to their corporation, its property and its business, as the Amalgamated Copper Company shall order and direct, and that the Amalgamated Copper Company procured said shares of stock of the Boston & Montana Company by exchanging with the officers and shareholders thereof at the rate of four shares of the stock of the Amalgamated Copper Company for one share of stock in the other company. And the appellant further alleged that said Amalgamated Copper Company has not complied with the laws of the state of Montana to enable foreign corporations to do business in that state, but that it is now in full management and control of the Boston & Montana Company, and of all its property, business and affairs, as well as of all other mining companies above mentioned; that the Amalgamated Copper Company is not entitled to

hold, own, or control any property or rights in the state of Montana or to carry on or conduct or direct any business therein, but all its aforesaid acts are in violation of section 20, art. 15, of the constitution of the state of Montana, and of sections 321 and 984 of the Penal Code of Montana. And the appellant alleged, on information and belief, that it is not the intention of the Amalgamated Copper Company to comply with the laws of the state of Montana allowing foreign corporations to carry on business within that state, or with any law of that state; and that at the time when the said Amalgamated Copper Company obtained possession of the stock of the Boston & Montana Company the latter company was possessed of money in the sum of $6,000,000, of which the appellant and others similarly situated were entitled to their respective shares as stockholders of said company, but that the directors of the company, without right and against the authority and consent of the appellant, delivered over said money to the Amalgamated Copper Company, which company has converted the same to its own use. The appellant further alleged that the mining corporations above mentioned, organized under the laws of the state of Montana, including the Boston & Montana Company and also the Butte & Boston Consolidated Mining Company, organized under the laws of New York, had each a large number of valuable mines and mining claims in Silver Bow County; that a large number of the claims of the Boston & Montana Company are situated adjacent to or in the vicinity of mines belonging to the other companies; that the appellant is informed and believes that mine workings have been extended into the mines and mining claims of the Boston & Montana Company from other mines, and will hereafter be extended therein, and that one of the purposes of the organization and existence of the Amalgamated Copper Company and of its acquisition and control of the stock of the other companies was and is to arbitrarily determine what veins and ore beds belong to the respective claims and property owned by each of said mining companies and corporations, without the consent of the corporation or their stockholders, and to thereby devote to its own use and benefit such ore and minerals, and credit the same as an income from the property of such corporations; that the object and purpose of said Amalgamated Copper Company in acquiring the stock in the corporation above named was to control the output and price of minerals from the mines of all, and it will hereafter so conduct the mining operations in all as to affect the production and price of metal therefrom, and will charge against the appellant and other stockholders similarly situated an excessive amount for mining and disposition of the ores credited to the Boston & Montana Company, and that it has the power to shut down all or any of the mines controlled by it in Montana, and to close any or all of its smelters, or to permit the mines of the Boston & Montana Company to be worked by the other corporations, all to the great and irreparable injury of the appellant. The relief prayed for was (1) that it be adjudged and decreed that the Amalgamated Copper Company, its officers and agents, have no right to any of the shares of the capital stock of the Boston & Montana Company; that the same be canceled and surrendered up to the latter company; that the Amalgamated Copper Company, its officers, agents, and trustees, be enjoined from voting any of said shares, and that they be enjoined from ordering, directing, or controlling any of the officers and agents of the Boston & Montana Company with reference to property, business, or affairs of said company; (2) that the Boston & Montana Company, its officers, agents, and representatives, be enjoined from making or allowing any transfer on the books of that corporation of any of the shares of the stock now held or which may be procured by the Amalgamated Copper Company, or its officers or agents, and from allowing or permitting any of said shares to be voted by the Amalgamated Copper Company, its officers or agents; (3) that the directors of the Boston & Montana Company be enjoined from acting as directors or officers thereof; (4) that the said exchange of stock between the two said companies be declared null and void, and set aside and vacated, and that all moneys belonging to the Boston & Montana Company be accounted for and paid over to that company or its receiver; (5) that the Amalgamated Copper Company be declared a trust and monopoly, and that it be forever enjoined from carrying on any business

with the property of the Boston & Montana Company, within the state of Montana or otherwise, or in any wise interfere. therewith, or doing any business whatsoever within said state, either directly, or by the acts or assistance or advice of any person or corporation whatsoever; (6) that a receiver for all the property and business of the Boston &·Montana Company be appointed; (7) that an injunction be granted the appellant pending the final determination of the suit to prevent any unlawful act upon the part of the defendants and to preserve his rights as a stockholder in the Boston & Montana Company.

After the removal of the cause from the state court to the circuit court a motion was made to remand upon the ground that no separable controversy exists as to the removing corporation. The motion was denied. Thereafter, upon the application of the appellees, and upon the ground that a prior suit was pending in the state court between the same parties, involving the same subject-matter, the circuit court enjoined the appellant from further prosecuting the present suit. From that injunction order the appeal is taken. One of the grounds of error relied upon by the appellant is that the circuit court erred in denying the motion to remand.

McHatton & Cotter, for appellant.

Forbis & Evans (C. F. Kelly, of counsel), for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

We think that the cause was improperly removed to the circuit court. Although the prayer of the complaint seeks relief expressed in varying form, as against the Amalgamated Copper Company, the cause of suit is substantially one. It is the question of the right of the Amalgamated Copper Company to control the property, business, and corporate stock of the Boston & Montana Company in the manner which is set forth in the bill. The appellant, as plaintiff in the suit, is interested in no corporation other than the Boston & Montana Company. He challenges the right of the Amalgamated Copper Company to interfere with the business affairs of his corporation and to take over its property. The illegality of this interference, as alleged in the bill, is predicated upon different grounds, but the sole aim and purpose of the suit is to dissolve the combination which has been formed between the two corporations, and to protect the interest of the appellant as a stockholder of the Boston & Montana Company. It is evident at a glance that the Boston & Montana Company is a necessary party to every phase of the controversy, unless it be that the relief prayed for in the fifth subdivision of the prayer presents matter in which it has no concern. It is true that in a portion of the relief which is there sought the prayer goes further than the averments ˚of the bill, and asks that the Amalgamated Copper Company be debarred from doing business within the state of Montana. This prayer for relief does not create a separate controversy. The suit is not brought to dissolve the Amalgamated Copper Company or to enjoin it from doing business in the state of Montana. Where the relief sought against one of several defendants is merely incidental to the principal purpose of the suit, the fact that such incidental relief pertains to one only of the defendants does not make it a separable controversy so as to give him the right of removal. Safe-Deposit Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733, 29 L. Ed. 898; Graves v. Corbin, 132

U. S. 571, 10 Sup. Ct. 196, 33 L. Ed. 462; Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528; Bellaire v. Railroad Co., 146 U. S. 117, 13 Sup. Ct. 16, 36 L. Ed. 910; Brown v. Trousdale, 138 U. S. 389, 11 Sup. Ct. 308, 34 L. Ed. 987; Mayor, etc., of New York v. New Jersey Steamboat Transp. Co. (C. C.) 24 Fed. 817; City of Le Mars v. Iowa Falls & S. C. R. Co. (C. C.) 48 Fed. 661; Ames v. Railroad Co. (C. C.) 39 Fed. 881. The prayer that the Amalgamated Copper Company be declared a trust and a monopoly is only incidental to the other relief which is prayed for in connection therewith, namely, that it be enjoined from controlling the Boston & Montana Company; and the same was evidently true, in the mind of the pleader, of the further prayer that the Amalgamated Copper Company be enjoined from doing business in the state of Montana. Not only is the relief so sought plainly incidental to the main purpose of the suit, but the bill contains no averment upon which such relief could be obtained. No fact is alleged to show a right in the appellant to demand such an injunction. He exhibits, therefore, no controversy as to his right to such relief. In order to show the existence of a controversy, facts must be alleged upon which the court can see that a question is presented for its determination. The court will not search the record for a mere fanciful controversy. The controversy must be real, and must be apparent upon the face of the bill. The appellant sues in no official capacity, but as a private citizen for the protection of his individual rights. He had no authority to sue in the interests of the public, or to obtain an injunction against the transaction of business by the Amalgamated Copper Company in the state of Montana, or to obtain any relief save such as affected his property rights as a stockholder in the Boston & Montana Company. Thomp. Corp., §§ 502, 1852, 7944.

It is suggested that the real controversy in this case is between the two corporations, and that the appellant is but a formal party, since the suit is one to enforce the right of the Boston & Montana Company. It is clear, however, from the allegations of the bill, that the Boston & Montana Company is not a party in the same interest with the appellant. If it be true that it has conspired with the Amalgamated Copper Company to do the illegal acts which are charged, both the corporations are antagonistic to the appellant, and both are necessary parties defendant to the suit. In a similar case the supreme court said:

"Grayson is not suing for the Memphis & Charleston Company, but for himself. It is true a decree in his favor may be for the advantage of the Memphis & Charleston Company, but he does not represent the company in its corporate capacity, and has no authority to do so. As a stockholder he seeks protection from the illegal acts of his own company as well as the other." Railroad Co. v. Grayson, 119 U. S. 240, 244, 7 Sup. Ct. 190, 30 L. Ed. 382.

Of similar import is Railroad Co. v. Mills, 113 U. S. 249, 5 Sup. Ct. 456, 28 L. Ed. 949.

The decree will be reversed, and the cause remanded to the circuit court, with instructions to remand the same to the state court, whence it was removed.