### GROEL v. UNITED ELECTRIC CO. OF NEW JERSEY et al.

(Circuit Court, D. New Jersey. September 13, 1904.)

**1. CORPORATIONS—SUITS BY STOCKHOLDERS—REQUISITES OF BILL.**

Equity Rule 94, prescribing the requisites of a bill by a stockholder to enforce rights of the corporation, was adopted for the purpose of preventing collusive suits in the federal courts of which they would not otherwise have jurisdiction, and, except in the requirement that the bill be verified by oath, such rule adds nothing to what was previously substantially required by correct pleading. It in no way affects the rule that, in determining federal jurisdiction in such suits, the corporation is to be aligned with the complainant or the defendants according to the facts.

**2. SAME—JURISDICTION OF FEDERAL COURT—ALIGNMENT OF PARTIES.**

In a suit in equity instituted by a stockholder in his own name, but upon a right of action in his corporation, such corporation is an indispensable party, and, for the purpose of determining the jurisdiction of a federal

court, will be aligned with the defendants whenever the officers or persons controlling it are shown to be opposed to the object sought by the complaining stockholder, and when such opposition does not appear it will be aligned with the complainant.

**3. REMOVAL OF CAUSES—MOTION TO REMAND—DOUBTFUL JURISDICTION.**

It is the duty of a federal court to remand a cause removed from a state court when its jurisdiction is doubtful.

In Equity. On motion to remand to state court.

Nathan Bijur and Edwin G. Adams, for complainant.

R. V. Lindabury, Robert H. McCarter, and Charles E. Morgan, Jr., for defendant United Gas Imp. Co.

LANNING, District Judge. The complainant is a citizen of the state of New Jersey, and a stockholder in the United Electric Company of New Jersey, a corporation organized under the laws of New Jersey. The defendants are the United Gas Improvement Company, a corporation organized under the laws of Pennsylvania, and the above mentioned New Jersey Company. The complainant sues, on behalf of himself and other stockholders of the New Jersey company, to recover from the Pennsylvania company for the New Jersey company secret profits alleged to have been received by the Pennsylvania company in the promotion and organization of the New Jersey company and in the sale and disposition of its stock and bonds. The bill was originally filed in the Court of Chancery of the state of New Jersey. The Pennsylvania company had the case removed to this court upon a petition alleging that the controversy therein is wholly between citizens of different states, and that it can be fully determined as between them. The complainant now moves to remand the case to the New Jersey Court of Chancery on the ground that the citizenship of the parties is not such as to enable this court to assume jurisdiction. He insists that the New Jersey company must be aligned with the Pennsylvania company as a party defendant, and that, as the complainant and the New Jersey company are both citizens of New Jersey, one being the complainant and the other a defendant, the removal of the case was erroneous. The Pennsylvania company, on the other hand, insists that, as no relief is sought against the New Jersey company, and no decree against it can be made, the citizenship of the latter company is not a factor to be considered in determining the question of jurisdiction, or, if it is, that the New Jersey company must be aligned with the complainant because its interests are identical with those of the complainant.

In the second section of the removal act of March 3, 1875, as amended in 1888 (Act March 3, 1875, c. 137, § 2, 18 Stat. 470, amended Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 509]), it is provided that "when in any suit mentioned in this section [and the Pennsylvania company insists that this suit is such an one] there shall be a controversy wholly between citizens of different states, and which can be fully determined as between

¶ 3. See Removal of Causes, vol. 42, Cent. Dig. § 220.

them, then either one or more of the defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district." In construing this section, the Supreme Court has repeatedly held that, where a removal from a state court to a Circuit Court of the United States is made on the ground that there exists in the cause removed a controversy which is wholly between citizens of different states and which can be fully determined as between them, there must exist in the suit a separate and distinct cause of action in which a controversy will be presented with citizens of' one or more states on one side of it, and citizens of one or more other states on the opposite side of it. Hyde v. Ruble, 104 U. S. 407, 26 L. Ed. 823; Corbin v. Van Brunt, 105 U. S. 576, 26 L. Ed. 1176; Fraser v. Jennison, 106 U. S. 191, 1 Sup. Ct. 171, 27 L. Ed. 131; Crump v. Thurber, 115 U. S. 56, 5 Sup. Ct. 1154, 29 L. Ed. 328; Geer v. Mathieson Alkali Works, 190 U. S. 428, 23 Sup. Ct. 807, 47 L. Ed. 1122. It is also settled that, if there be in any such cause any merely formal or nominal parties, their citizenship will be ignored in determining the question of the jurisdiction of a federal court. Wormley v. Wormley, 8 Wheat. 451, 5 L. Ed. 651; Wood v. Davis, 18 How. 467, 15 L. Ed. 460; Bacon v. Rives, 106 U. S. 99, 1 Sup. Ct. 3, 27 L. Ed. 69. And it is also settled that, in one respect at least, the removal act of 1875 radically changed the law concerning the removal of 'causes from the state courts. Previous to its passage the position of parties in the record of a case was a governing factor in determining their rights respecting a removal. Since its passage those rights are fixed by their actual relation to the controversy, without regard to their position as plaintiffs or defendants on the face of the pleadings. Removal Cases, 100 U. S. 457, 25 L. Ed. 593; Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514.

The New Jersey company, in the case now under consideration, cannot be considered a merely formal or nominal party. It is a necessary and indispensable party. The case could not proceed without it. The complainant seeks relief in its behalf because it will not seek it for itself. As it will not voluntarily act as complainant, the practice in equity requires that it shall be brought in as a party defendant. It follows that, in determining the question of jurisdiction, its citizenship cannot be ignored. But the mere fact that it stands as a defendant on the face of the pleadings does not fix its status in the controversy. That is fixed by its real relation to the controversy. Whether that relation requires it to be ranged with the complainant or with the Pennsylvania company as a party defendant, is the question presented in this case.

In Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401, the complainant, a citizen of Connecticut, filed his bill in the Circuit Court of the United States against a bank, a corporation of Ohio, in which he was a stockholder, and other citizens of Ohio, to have certain taxes assessed against the bank set aside. He had requested the bank to sue, and it refused. The jurisdiction of the Circuit Court was upheld. This case was decided 20 years before the passage

of the removal act of 1875, and during the time when, under the provisions of the judiciary act of 1789, the jurisdiction of a federal court in a controversy between citizens of different states depended, not upon the relation of the parties to the controversy, but upon the places occupied by them as complainants and defendants on the face of the pleadings. Of course, under that rule the corporation of Ohio could not have been aligned with the complainant. The case furnishes no aid in solving the question now presented.

In Arapahoe County v. Kansas Pacific Railway Co., Fed. Cas. No. 502, decided in 1877, it appears that the commissioners of Arapahoe county, Colo., stockholders in the Denver Pacific Railway Company, a Colorado corporation, commenced proceedings in equity in a Colorado state court against the company and its directors, two of whom were citizens of Colorado, but against whom no charges were made or relief asked. The other defendants were the Kansas Pacific Railway Company, a corporation of Kansas, and other parties who were citizens of other states. The object of the bill was to secure an accounting in favor of the Colorado company against the Kansas company, and to secure a decree in personam against the nonresident directors of the Colorado company. On application of the Kansas company and other defendants, the case was removed to the United States Circuit Court. The complainants moved to remand. Mr. Justice Miller, of the Supreme Court, sitting in circuit, heard the motion. In considering the question, he pointed out that the two defendant directors, who were citizens of Colorado, were declared in the bill to have protested against the wrong complained of, that it was hard to see why they were put into the bill at all, and that they were entirely immaterial parties, and might be regarded as out of the case. As to the Colorado company, however, a different conclusion was reached. It was held that the company was not a mere nominal party, but an indispensable party, without whose presence the suit could not proceed. But as the object of the suit was to secure an accounting to the Colorado company by the Kansas company, and a decree against the directors of the Colorado company who were not residents of Colorado, the learned justice declared that the interest of the Colorado company was the interest of the complainants, and that the controversy in the case was one in which the complainants and the Colorado company, citizens of Colorado, were on one side, and all the other defendants (excepting the two directors of Colorado who were "immaterial" parties), citizens of other states, were on the other side.

In Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, decided in 1881, a citizen of New York brought suit in the United States Circuit Court for the District of California against his own company, a corporation of California, and the city of Oakland, Cal., and other parties, directors of his company. The opinion was again by Justice Miller. A demurrer to the bill was sustained on the ground that the complainant had not shown by the allegations of his bill that the case could be sustained upon any principle justifying a

stockholder in suing his company in equity in his own name on a right of action existing in that company, and in which the company might itself be the appropriate complainant, and, further, because it did not appear that he had exhausted all available means to obtain, within the company itself, the redress of his grievances. The subject-matter of the actual relation of the parties to the controversy was not considered or even referred to. The same remark is true of Huntington v. Palmer, 104 U. S. 482, 26 L. Ed. 833. These two cases revealed to the Supreme Court so clearly the fact that a stockholder, a citizen of one state, and his corporation, a citizen of another state, might easily enter into a collusive agreement that a suit should be commenced in a federal court by the stockholder against his own company, and the other parties not citizens of the same state with the stockholder, for the purpose of securing relief for the stockholder's corporation, that the court was induced to promulgate the ninety-fourth rule in equity. In the promulgation of that rule it is clear that the court did nothing more, and intended to do nothing more, than to require a stockholder filing a bill in equity against his own company and other parties for relief, to which he deems his company entitled, to conform to the principles stated in Hawes v. Oakland. In that case Justice Miller had commented (pages 452, 453, 104 U. S., 26 L. Ed. 827) on the looseness of practice that had grown up since the decision of Dodge v. Woolsey, pointing out the fact that it had become a not uncommon thing for corporations to enter into collusive agreements with nonresident stockholders for the bringing of suits in the federal courts, and, if there were no nonresident stockholders, to transfer a few shares to nonresidents for that purpose. To destroy this looseness of practice, and to restore the practice to its former conformity with true principles, a provision was inserted in the rule that in every such stockholder's bill there should be an allegation that the stockholder was such "at the time of the transaction of which he complains, or that his share devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance." He had further said (pages 460, 461, 104 U. S., 26 L. Ed. 827) that, in addition to setting forth in his bill the grievances which call for relief, the stockholder "should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes," and that he "must make an earnest, not a simulated, effort with the managing body of the corporation, to induce remedial action on their part, and that this must be made apparent to the court"; and, to give effect to this judicial exposition of the law, a further provision was inserted in the rule that the bill "must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the cause of his failure to obtain such action." The rule contains no other provision whatever, except that the allegations of the bill must be verified by oath.

It is apparent, therefore, that it was not the purpose of the court, by the promulgation of the rule, in any wise to alter or modify any of the jurisdictional principles upon which such a bill should be founded. It does, indeed, require an express allegation in the bill that the suit is not a collusive one. But before its promulgation it had always been the law that the facts alleged in the bill should be those from which no inference of collusion could reasonably be drawn, and that, if at any time in the progress of a suit it appeared to be a collusive one, the bill would be dismissed. The provision of the rule that the bill shall contain an allegation that the suit is not collusive, merely requires the statement in express language of a fact that in a properly framed bill should always have appeared, though, perhaps, before its promulgation, averments which would have excluded any reasonable inference of collusion would have been deemed sufficient. It follows that, as to the allegations of a bill, the rule requires nothing substantially new. The only really new thing required by it is that the allegations of the bill shall be verified by oath. The English and American cases preceding the promulgation of the rule established, according to the exposition in Hawes v. Oakland, a principle which rendered it necessary for a stockholder filing a bill against his own company and other parties, for relief in behalf of his company, to allege in substance all the facts required to be alleged by the rule. The rule, except as to the provision concerning the verification of the bill by oath, is, in effect, merely confirmatory of what was by correct practice before required. It does not, therefore, in any manner alter or modify the rule concerning the alignment of parties stated in the Removal Cases and in Barney v. Latham.

In Greenwood v. Freight Co., 105 U. S. 13, 26 L. Ed. 961, decided at the same term as Hawes v. Oakland and Huntington v. Palmer, the bill was filed by a citizen of New York against his company, a corporation of Massachusetts, and other parties, citizens of the latter state. On a demurrer to the bill it was contended in support of the demurrer that the complainant, whose interest was merely that of a stockholder in the Massachusetts company, showed no right to sustain the bill, the object of which was to assert rights of the Massachusetts company. By the bill the complainant declared that the defendant the Union Freight Railroad Company was about to proceed in such a manner, under a certain act of the Legislature of Massachusetts passed in 1872 (St. 1872, p. 279, c. 342), that the complainant's company would be utterly destroyed and its contracts impaired, and his stock in his company made valueless; that he had requested the directors of his company to take steps to assert the rights of the company, and that they had declined to do so, on the ground that the assertion of such rights in the state courts would be accompanied with many embarrassments. Justice Miller, who delivered the opinion in this case also, after referring to Hawes v. Oakland, said:

"We refer to that opinion for the principles which must govern this branch of the present case. It is sufficient to say that this bill presents so strong a case of the total destruction of the corporate existence, and of the annihilation

of all corporate powers under the act of 1872, that we think complainant, as a stockholder, comes within the rule laid down in that opinion, and which authorizes a shareholder to maintain a suit to prevent such a disaster, where the corporation peremptorily refuses to move in the matter."

In this case, therefore, the Massachusetts company was clearly aligned with the defendants; for, being a necessary and not a formal party, it must have been aligned either with the complainant or the defendants, and, had it been aligned with the complainant, there would have been a Massachusetts party suing other Massachusetts parties, and the court would have no jurisdiction.

In Detroit v. Dean, 106 U. S. 537, 1 Sup. Ct. 560, 27 L. Ed. 300, the bill was dismissed because of collusion between the complainant and his company. That case gives no aid here.

In New Jersey Central Railroad Company v. Mills, 113 U. S. 249, 5 Sup. Ct. 456, 28 L. Ed. 949, the bill was filed in the Court of Chancery of New Jersey by two citizens of that state, executors of Stephen Vail, and as such stockholders in the railroad company, a corporation of New Jersey, against that company and a Pennsylvania corporation, and several individuals, citizens of New Jersey, Pennsylvania, and Maryland, and directors in one or both of the corporations, to set aside a lease made by the New Jersey company to the Pennsylvania company, and for an account of profits received under the lease. The defendants filed a joint answer, after which the case was removed to this court on the joint petition of all the defendants who, in their petition, stated that the defendants, other than the two companies, were made parties only by reason of their official connection with those companies, that they were not necessary or substantial parties to the controversy, that the complainants had the right to sue on behalf of the New Jersey company, and that the controversy was therefore between citizens of different states. By this petition, it will be observed, the defendants aligned the New Jersey Company, which was a defendant on the face of the pleadings, with the complainants, and thus sought to establish the jurisdiction of this court. This court refused jurisdiction and remanded the case. On appeal from that order Mr. Justice Gray said:

"The controversy in this case is not between citizens of different states. * * * All the defendants unite in defending the acts complained of, and in denying the illegality and fraud charged against them. The New Jersey corporation is in no sense a merely formal party to the suit, or a party in the same interest with the plaintiffs, but is rightly and necessarily made a defendant."

The order to remand was affirmed. Plainly, therefore, the court aligned the New Jersey company with the defendants.

In East Tennessee, etc., Railroad v. Grayson, 119 U. S. 240, 7 Sup. St. 190, 30 L. Ed. 382, Grayson, a citizen of Alabama, filed a bill, as a stockholder of a company incorporated under the laws of Tennessee, Alabama, and Mississippi, against that company, and another company incorporated under the laws of Tennessee and Georgia, to secure a cancellation of a lease executed by the former to the latter company. The case was removed on the petition of the latter company to the United States Circuit Court, and by that court remanded to the state court. On appeal, Mr.

Chief Justice Waite said the case could not be distinguished from New Jersey Central Railroad Company v. Mills. As to the suggestion that in the New Jersey Central Case all the defendants had petitioned for the removal, while in the case then under consideration the complainant Grayson's company had not joined the other defendant in the petition for removal, the court said:

"But here the allegations of the bill, which, for the purposes of the present inquiry, must be considered as confessed, are to the effect that the two companies are acting in harmony upon the question of validity, and that, unless restrained, the Memphis & Charleston company [Grayson's company] will make a settlement which will be greatly to the injury of its minority stockholders, of whom this complainant is one. This, is certainly the equivalent of the joint answer in the other case."

Here, too, the complainant's company was aligned with the other defendant.

In Quincy v. Steel, 120 U. S. 241, 7 Sup. Ct. 520, 30 L. Ed. 624, Steel, a citizen of Alabama and a stockholder of an Illinois corporation, filed his bill in the United States Circuit Court for the Southern District of Illinois, against that corporation and the city of Quincy, Ill., to enforce a contract existing between the two defendants. He failed to comply with the provisions of the ninety-fourth equity rule. The demurrer to the bill was sustained on this ground only. The question of the proper alignment of the parties to the controversy was not alluded to.

In Hutton v. Bancroft & Sons Co. (C. C.) 77 Fed. 481, the complainant, a citizen of Delaware and a stockholder in the Bancroft & Sons Company, a corporation of Delaware, filed his bill in the Delaware Court of Chancery against that company and one Bloede, a citizen of Maryland. The suit was removed to the United States Circuit Court on the petition of Bloede. A motion to remand was denied. By the bill of the complainant it was alleged that, by reason of certain representations by Bloede, the company had been induced to enter into an agreement with Bloede whereby the company was to exchange some of its stock for stock of the Victor G. Bloede Company; that the stockholders of the Bancroft & Sons Company, in the absence of the complainant, had ratified the agreement; that the agreement was made without lawful authority; that Bloede had received large dividends on stock of the Bancroft Sons Company acquired by him under the agreement, and that other dividends had been declared in his favor; that the representations by Bloede to the company were false, and known by him to be so; and that the company would not have entered into the agreement if it had known the truth concerning the representations. The prayer was that Bloede might be required to repay the dividends by him received, to surrender his stock for cancellation, and that the company be restrained from paying to him any further dividends, etc. The company's separate answer admitted that it was induced to make the agreement by reason of Bloede's false representations, and that upon the discovery of the truth as to the representations it endeavored to secure a return of the stock by Bloede to the company. It also admitted all the other allegations

of the bill except the one charging it with having exceeded its lawful authority in making the agreement, which it neither admitted nor denied, but submitted to the judgment of the court. With these facts before the Circuit Court, it was said:

"There appears to be no matter of dispute, or any controversy whatever, between the complainant and the defendant the Joseph Bancroft & Sons Company. On the contrary, it is apparent that their interests in the outcome of the present suit are really the same, and that they are both seeking the same objects, to wit, the return and cancellation of the stock of the Bancroft & Sons Company which has been issued to Bloede, the repayment of the money paid to him for dividends thereon, and an injunction to prevent the payment of any further dividends on that stock. So complete is the identity of interest between the complainant and the Bancroft & Sons Company, there cannot be the slightest doubt that a decree sustaining the bill in every particular would be equally satisfactory to both. In fact, they are, for the purposes of the present suit, joint complainants. There is but one exception, already noted, in the answer of the Bancroft & Sons Company to its uniform admissions of the charges in the bill, and that is in reference to the alleged unauthorized act of the Bancroft & Sons Company in the purchase of the stock of the Victor G. Bloede Company. To this charge, however, the answer makes no denial, and submits the question to the judgment of the court. There is, therefore, no matter of dispute between Hutton and the Bancroft Company."

The denial of the motion to remand was evidently because the complainant's company was aligned with the complainant and not the defendant, and consequently that the suit was, in reality, one between citizens of Delaware and a citizen of Maryland. Such alignment was entirely proper. It is difficult, however, to harmonize the case with the doctrine of Hawes v. Oakland. It does not appear that the complainant made any effort, before filing his bill, to get the company itself to commence a suit. It is true the case was commenced in a court of the state of Delaware. It is also true that the courts of that state may not have adopted so rigid a rule concerning the essential allegations in a stockholder's bill as that declared in Hawes v. Oakland. But no such consideration can affect the administration of justice in a federal court. Though a stockholder's bill filed in a state court may not, by any rule of that court or any law of the state, be required to be verified by oath, and though, in a case removed from a state court to a federal court, the provision of the ninety-fourth equity rule concerning such verification is not applicable, the bill, though removed from a state court, must contain the essential allegations required by Hawes v. Oakland, otherwise it will be demurrable just as a bill failing to contain such allegations filed originally in a federal court is demurrable. This point, however, does not seem to have been presented in Hutton v. Bancroft & Sons Co., nor was it considered in the opinion. The opinion, therefore, cannot be deemed as one supporting the doctrine that in all cases where a stockholder and his company are citizens of the same state, and the stockholder files a bill against his company and citizens of other states for relief to which his company is entitled, his company shall be aligned with the complainant. It supports only the doctrine that, on a stockholder's bill for the redress of grievances suffered by his corporation, the corporation, if there be no real controversy between it and the stockholder, will, though it be a party defendant

in the suit, be aligned with the stockholder as a party complainant in the controversy.

In De Neufville v. New York & Northern Ry. Co., 81 Fed. 10, 26 C. C. A. 306, we have a decision by the Circuit Court of Appeals of the Second Circuit. In this case the bill was filed by a stockholder, who was not a citizen of the state of New York, against his own corporation and another corporation, both citizens of New York. A demurrer to the bill for want of equity was sustained by the Circuit Court. The Circuit Court of Appeals reversed the Circuit Court, holding the bill to be good, and in the course of the opinion used this language:

"The real controversy is between the corporation, whose officers refuse to assert its rights, and the alleged conspirators, who have deprived it of its property. If the wholesome rule approved by the Supreme Court in numerous decisions were followed, and the parties arranged, not as they stand in title, but according to their interest in the controversy, we would have the New York & Northern Railway Company [the stockholder's company] classified as a plaintiff, and the diversity of citizenship necessary to confer jurisdiction would no longer exist. If the Circuit Courts were entirely free to enforce the provisions of the fifth section of the act of 1875 to every case where it logically applies, they would, no doubt, be able to relieve their dockets, as was suggested in Hawes v. Oakland, of many cases which have no proper place there; but the decisions in Dodge v. Woolsey, Hawes v. Oakland, and Quincy v. Steel, and the ninety-fourth rule in equity, seem to preclude a strict application, in cases such as the one at bar, of the rule that parties may be rearranged according to interest in the controversy."

With profoundest respect for the opinions of this high court, I must withhold my assent to the statements above quoted. Evidently, the Circuit Court of Appeals refused to align the complainant's company with the complainant because they supposed the cases cited and the ninety-fourth equity rule had modified the "wholesome rule approved by the Supreme Court in numerous decisions" concerning the arranging of parties according to their interest in the controversy. I have already endeavored to show that no such modification has been made. It may be well, however, to refer again to the cases cited by the Circuit Court of Appeals. Dodge v. Woolsey was decided in 1855, when, under the law as it then stood, the parties were classified according to their places in the pleadings. Ever since the construction of the act of 1875 by the Supreme Court in the opinions rendered in the Removal Cases and in Barney v. Latham, the parties have been classified by that court, not according to their real interest in the controversy, as stated in the De Neufville Case, but according to the facts of the case. In the Removal Cases the court said:

"Under the new law the mere form of the pleadings may be put aside, and the parties placed on different sides of the matter in dispute according to the facts."

And in Barney v. Latham, in referring to the Removal Cases, the court said:

"Disregarding as immaterial the mere form of the pleadings, and placing the parties on opposite sides of the real matter in dispute according to the facts, we found that the only controversy there was between citizens of Ohio and Pennsylvania on one side, and certain corporations created under the laws of Iowa on the other."

Hawes v. Oakland and Quincy v. Steel, as above stated, were collusive suits, and dismissed for that reason, without consideration of the question of the proper alignment of the parties therein.

In the De Neufville Case the complainant averred in his bill that the defendants had obtained control of a majority of the stock and bonds of his company for the purpose of wrecking it; that they had procured, by resignation and election, a board of directors of the complainant's company in harmony with that purpose; and that the board so elected did, in fact, by refusing profitable business and diverting traffic, accomplish such purpose. In such a case the classification of the parties "according to the facts" would put the complainant on one side of the controversy and his own corporation on the other; for, as a corporation can act only through its authorized agents, the position assumed in a controversy by such agents must necessarily fix the position of the corporation. Had this principle been adopted by the Circuit Court of Appeals, it would not have changed their judgment in the case, but that judgment would then, as I think, have been founded on reasons approved and adopted by the Supreme Court in the three cases of Greenwood v. Freight Co., New Jersey Central Railroad Co. v. Mills, and East Tennessee, etc., Railroad v. Grayson.

In Lamm v. Parrot Silver & Copper Co. (C. C.) 111 Fed. 241, a stockholder filed a bill in a state court of Montana against his own company, a citizen of Montana, and a New Jersey corporation, and other parties, officers of the two corporations, whose citizenship is not stated. The relief sought was in aid of the stockholder's company. The case having been removed to the United States Circuit Court, a motion to remand was made. On this motion the Circuit Court held that the stockholder's company must be aligned with the stockholder as a party complainant, that the controversy was between the stockholder and his company on the one side and the New Jersey company on the other side, that the controversy was separable from any controversy with the officers of the two companies, and that the motion to remand should be overruled. The bill charges that the directors of the stockholder's company acted in conjunction with the New Jersey company in forming and carrying out an alleged unlawful agreement. It does not appear that the stockholder made any effort to secure redress through the action of his own company, though, possibly, as the directors of that company were parties to the agreement, he was relieved from that obligation. As in Hutton v. Bancroft Sons Co., so here, the point whether the stockholder's company could be properly aligned with the stockholder as a complainant in the controversy was not specially considered. The only reason for removal stated in the petition for removal was that a separable controversy existed as between the stockholder and his company on the one side and the New Jersey company on the other side, and the only question argued, on the motion to remand, was the one of such separable controversy. True, the proper alignment of the parties was incidentally involved in that discussion, but it seems to have been assumed that if the officers of the two companies could be elim-

inated from the controversy the case should not be remanded. The case, therefore, can hardly be regarded as an authoritative one in the matter of the proper alignment of parties.

In Elkins v. City of Chicago (C. C.) 119 Fed. 957, the Circuit Court for the Northern District of Illinois dismissed a bill because, inter alia, the complainant had not complied with the ninety-fourth equity rule. The opinion contains some expressions not in harmony with the views here expressed, but this language comes nearer to what I conceive the true rule to be:

"It is the duty of the court, for jurisdictional purposes, to ascertain the necessary parties to the suit, and align them upon the one side or the other in conformity with their own interests and attitude, irrespective of their designations in the bill."

In New Albany Waterworks v. Louisville Banking Co., 122 Fed. 776, 58 C. C. A. 576, the Circuit Court of Appeals of the Seventh Circuit affirmed an order for a preliminary injunction made by the Circuit Court. The facts shown were that the complainant was a citizen of Kentucky, and filed a stockholder's bill against its own company, a corporation of Indiana, and five of its seven directors, four of whom were citizens of Illinois and one a citizen of Indiana, and another corporation of Indiana. The bill was filed to set aside a lease made by the complainant's company to the other corporation. Persons interested in the latter corporation had acquired a controlling interest in the stock of the complainant's company, and secured the election of the five defendant directors through whom the lease had been secured. The Circuit Court had granted a preliminary injunction enjoining proceedings under the lease. The Circuit Court of Appeals held that the appellant's objection to the jurisdiction of the Circuit Court was untenable. It was conceded by the appellant that the majority of the directors in the complainant's company were opposed to the objects sought by the bill. Here, it will be seen, the parties were ranged according to the facts. The bill could have been sustained only on the theory that the hostile attitude of the five directors of the complainant's company fixed the position of that company as a party defendant in the controversy. That classification showed a case in which a citizen of Kentucky was on one side of the controversy, and citizens of Indiana and Illinois on the other.

Other cases in which the complainant's company was ranged with the defendants because of its antagonism to the complainant are MacGinniss v. Boston, etc., Mining Co., 119 Fed. 96, 55 C. C. A. 648, and Redfield v. B. & O. Railroad Co. (C. C.) 124 Fed. 929.

The counsel for the Pennsylvania company, in the case now in hand, have very strenuously contended that the New Jersey company cannot be aligned as a defendant with the Pennsylvania company, but that it must either be deemed a nominal party or be aligned with the complainant. This contention has seemed to necessitate the foregoing review of the authorities. The rule deduced from them is that, in a suit in equity instituted by a stockholder in his own name, but upon a right of action existing in his corporation, the stockholder's corporation will be aligned with the defendants

whenever the officers or persons controlling the corporation are shown to be opposed to the object sought by the complaining stockholder, and that, when such opposition does not appear, the stockholder's corporation will be aligned with the complainant in the suit. It may not be easy to bring the Arapahoe County Case and a few others into line with this rule. But it is believed that the cases decided by the Supreme Court involving the duty of classifying parties for the purpose of determining the question of the jurisdiction of Circuit Courts of the United States have established this rule. Adopting it as an established rule, we pass now to the consideration of the facts in the case at bar.

The bill charges that the Pennsylvania company and its confederates organized and promoted the New Jersey company, and caused it to be incorporated on March 4, 1899, by three individuals as incorporators, all of whom were the agents and representatives of the Pennsylvania company and its confederates; that the capital paid in by the three incorporators was furnished to them by or at the instance of the Pennsylvania company and its confederates; that the three incorporators had no real interest in the New Jersey company, or in the capital paid in by them; that the three incorporators, at the instance and behest of the Pennsylvania company and its confederates, elected themselves as directors of the New Jersey company; that, simultaneously with the incorporation of the New Jersey company, the Pennsylvania company and its confederates, through the Fidelity Trust Company of New Jersey as their agent, made and published an offer to the holders of the capital stock of certain other corporations, called the subsidiary companies, to purchase and acquire from them their stock in such corporations in exchange for cash and bonds of the New Jersey company, and to sell to them stock of the New Jersey company at $30 per share; that the offer was accepted by substantially all the holders of the capital stock of the subsidiary companies; that the Pennsylvania company and its confederates caused the three directors of the New Jersey company, who were the agents and representatives of the Pennsylvania company and its confederates, to issue and deliver to the Pennsylvania company twenty millions of bonds and also twenty millions of stock of the New Jersey company, nominally in exchange for and payment of the stock of the subsidiary companies and the cash received on the disposition of the bonds; that the bonds, and so much of the stock of the New Jersey company as was purchased by the stockholders of the subsidiary companies, were delivered to the stockholders of the subsidiary companies, but that the Pennsylvania company and its confederates kept for themselves all the residue of the stock of the New Jersey company, and all cash paid for such stock by the stockholders of the subsidiary companies, without giving any consideration for the same to the New Jersey company, and in fraud of the rights of the New Jersey company and its stockholders; and that the complainant, being at the time of the offer a stockholder in one of the subsidiary companies, accepted the offer and purchased both bonds and stock of the New Jersey company, and that

he was unaware of the alleged fraud that had been practiced upon his company and its stockholders by the Pennsylvania company and its confederates until within a few months previous to the filing of his bill, when he obtained information which led him to make further inquiries, which resulted in the discovery of the facts hereinabove set forth. The bill further alleges that after learning these facts, on August 11, 1903, the complainant addressed and delivered a letter to the president and directors of the New Jersey company, setting forth the facts, and requesting that company to bring an action for the recovery of the unlawful and secret profits thus made by the Pennsylvania company and its confederates, and generally to take such proceedings in the premises as might be necessary to protect the rights of the New Jersey company, but that that company has notified the complainant of its refusal to bring the action. The prayer of the bill is for a discovery by each of the two corporations concerning various subjects connected with the transactions set forth in the bill, that the amount of secret profits made by the Pennsylvania company and its confederates may be ascertained and decreed to be paid to the New Jersey company, and that the New Jersey company may also recover damages against the Pennsylvania company, and have general relief.

The allegations of the bill, which for the purposes of this motion must be taken as true, are sufficient to show that the New Jersey company is in the control of officers who are carrying out the purposes of the Pennsylvania company and its confederates, and that their position in the controversy is one of hostility to the position assumed by the complainant. The classification of the parties "according to the facts," and according to the principles adopted in Greenwood v. Freight Co., New Jersey Central Railroad Co. v. Mills, and East Tennessee, etc., Railroad v. Grayson, places the New Jersey company with the Pennsylvania company as a party defendant in the controversy. We therefore have a citizen of New Jersey on one side, and another citizen of the same state on the other side. Consequently, this court is without jurisdiction, and the case must be remanded to the New Jersey Court of Chancery.

Even if the question of jurisdiction were doubtful, it would still be the duty of the court to remand the case. Fitzgerald v. Missouri Pac. Ry. Co. (C. C.) 45 Fed. 812; Kessinger v. Vannatta (C. C.) 27 Fed. 890; McKown v. Kansas & T. Coal Co. (C. C.) 105 Fed. 657.