## HUTTON v. JOSEPH BANCROFT & SONS CO. et al.

(Circuit Court, D. Delaware. December 16, 1896.)

1. REMOVAL OF CAUSES—DIVERSE CITIZENSHIP—ARRANGEMENT OF PARTIES.

Where the controversy, in a suit commenced in a state court, is between the complainant and one of the defendants, who are citizens of different states, the fact that there is another defendant, who is a citizen of the complainant's state, does not prevent the case from being removed to a federal court, where the interest of such co-defendant is identical with that of complainant.

2. SAME—ACTUAL CONTROVERSY.

When the answer of one of two co-defendants admits all the allegations of the complainant's bill, with one exception, as to which it makes no denial, but submits the question to the judgment of the court, such answer raises no matter of dispute between the parties which will prevent the removal of the cause from a state to a federal court, by another defendant, between whom and the complainant there is an actual controversy.

3. SAME—SPECIAL APPEARANCE.

A defendant not served with process may enter a special appearance in a state court, for the purpose of petitioning for the removal of the cause to a federal court.

This was a suit by John Hutton against Joseph Bancroft & Sons Company and Victor G. Bloede. Defendant Bloede removed the suit from the court of chancery into this court, and complainant now moves to remand.

Benj. Fields and Wm. S. Hillis, for the motion.

Bradford, Vandegrift & Byrne, opposed.

WALES, District Judge. This suit was originally brought in the court of chancery of the state of Delaware for New Castle county, and was removed into this court on the petition of Victor G. Bloede, one of the defendants. In his petition, Bloede states that he is a resident and citizen of the state of Maryland; that the Bancroft & Sons Company, his co-defendant, and John Hutton, the complainant, are citizens of the state of Delaware; that the Bancroft & Sons Company is only a nominal defendant, while its actual interests are identical with those of the complainant; and that there is a separable controversy between the petitioner, on the one side, and the complainant and the Bancroft & Sons Company, on the other side. A motion is now made by complainant's solicitor to remand the cause to the state court, on the ground that the circuit court is without jurisdiction, as the pleadings do not show the existence of "a controversy which is wholly between citizens of different states, and which can be fully determined as between them."

By the act of congress of March 3, 1887, as corrected by act of August 13, 1888 (25 Stat. 433), the circuit courts of the United States are given concurrent jurisdiction with the courts of the several states of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum of $2,000, in which there shall be a controversy between citizens of different states. The second section of the act provides that any such suit "now pending, or which may hereafter be brought

in any state court, may be removed to the circuit court of the United States for the proper district by the defendant or defendants therein, being non-residents of that state. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district."

Since the decision in Meyer v. Construction Co., 100 U. S. 457–468, the construction and meaning of the provision in the second section of the act just quoted can no longer be doubted. In that case, which was one of several called "Removal Cases," the court held:

"That when a controversy about which a suit in a state court is brought is between citizens of one or more states, on one side, and citizens of other states, on the other side, either party to the controversy may remove the suit to the circuit court, without regard to the position they occupy in the pleadings as plaintiffs or defendants. For the purpose of a removal, the matter in dispute may be ascertained, and the parties to the suit arranged on opposite sides of that dispute. If, in such arrangement, it appears that those on one side are all citizens of different states from those on the other, the suit may be removed. Under the old law, the pleadings only were looked at, and the rights of the parties in respect to a removal were determined solely according to the position they occupied as plaintiffs or defendants in the suit. Under the new law, the mere form of the pleadings may be put aside, and the parties placed on different sides of the matter in dispute, according to the facts."

This construction was put on the old removal law of 1875, but is conceded to be equally applicable to the later act of 1887. This decision was followed in Harter v. Kernochan, 103 U. S. 562, where the court said that the particular position, whether as complainants or defendants, assigned to the parties by the draftsman of the bill, may be disregarded when it is apparent that there is a single controversy embracing the whole suit, between citizens of different states.

See, also, Evers v. Watson, 156 U. S. 532, 15 Sup. Ct. 430; Wolcott v. Sprague, 55 Fed. 545; Anderson v. Bowers, 40 Fed. 708; Water Co. v. Babcock, 76 Fed. 248, and cases there cited.

Where the controversy is between the complainant and the removing defendant, who are citizens of different states, the fact that there is another defendant, who is a citizen of the complainant's state, does not prevent the case from being removed, where the interest of such co-defendant is identical with that of complainant. Brown v. Murray, Nelson & Co., 43 Fed. 614.

Such being the settled law, the next inquiry is to ascertain the nature of the controversy between the parties to the present suit, and in what position they jointly or severally stand in relation thereto. The complainant's bill alleges that he is the owner of 84 shares, of the value of $100 each, of the stock of the Joseph Bancroft & Sons Company, which was incorporated under the laws of the state of Delaware, September 21, 1889, for the purpose of "manufacturing, bleaching, dyeing, and finishing cotton and other fabrics, and of carrying on any other business incident thereto, or

that might be combined therewith"; that prior to the 24th of May, 1893, Victor G. Bloede had been, and was, a manufacturing chemist, and carried on in the state of Maryland the business of manufacturing dyes, colors, gums, and chemicals, and that, in the early part of that year, negotiations were entered into between the Bancroft & Sons Company and Bloede, at which Bloede represented that his business had, for three years preceding, earned an average net profit of about $40,477 per annum, or a net profit of about 40 per cent. on a capitalization of $100,000; that the Bancroft & Sons Company, relying on the truth of these representations, entered into an agreement with Bloede that a company should be incorporated, to be called the Victor G. Bloede Company, of Baltimore city, with a capital of $150,000, divided into 1,500 shares, each of the value of $100, and that 474 shares of said company should be issued to the Bancroft & Sons Company, in return for or in exchange of 474 shares of the latter company to be issued to Bloede; that at a meeting of the stockholders of the Bancroft & Sons Company, on May 24, 1893, at which the complainant was not present, either personally or by proxy, the directors of the company were authorized to carry out the terms of the agreement, and that, in pursuance of the authority given to them, the directors did, on the 13th day of July, 1893, issue to Bloede 474 shares of its stock; that the Bancroft & Sons Company received, as the only consideration for its stock issued to Bloede, the like number of shares, of the same nominal value, of the Victor G. Bloede Company, which had been duly chartered and organized prior to July 13, 1893; that the purchase of the stock of the Bloede Company was not necessary for the business of the Bancroft & Sons Company, was made without lawful authority, and in violation of complainant's rights; that Bloede has received large sums of money in dividends on the stock issued to him; that other dividends have been declared on said stock, which remain unpaid, and still further dividends will be declared, which, together with the unpaid dividends, will be paid to Bloede by the Bancroft & Sons Company, unless it is restrained by injunction; that the Bancroft & Sons Company have received no dividends from the Victor G. Bloede Company; that the representations of the profits of his business made by Bloede were false, and known by him to be so; that the Bancroft & Sons Company were induced by such means to enter into and execute the agreement with Bloede, which they would not have done had they known the truth. The prayer of the bill is that Bloede be decreed to surrender the stock of the Bancroft & Sons Company to be canceled; to repay the money already received by him as dividends on said stock, and that he may be enjoined from assigning or disposing of said stock until this suit has been heard and determined; that the Bancroft & Sons Company may be restrained by injunction from paying over to Bloede any unpaid dividends, etc. The separate answer of the Joseph Bancroft & Sons Company admits all the allegations of the bill, save the one charging it with having exceeded its authority in purchasing the stock of the Bloede Company, which it neither ad-

mits. nor denies, but submits to the judgment of the court. It admits the payment of dividends to Bloede, as charged in the bill, and that other dividends are due and unpaid; that it has never received any dividends on the Bloede Company stock; that it was induced to make the agreement with Bloede by reason of his false representations as to the profits of his business; and that, upon the discovery of the truth, it endeavored to obtain the return and surrender of the stock issued to Bloede, and offered to return to him the stock of the Bloede Company, and is still ready and willing to make such return. The bill was filed February 27, 1896. The answer of the Bancroft & Sons Company was filed March 13, 1896. No service of process was made on Bloede; and on March 24, 1896, his solicitor appeared in the state court specially and merely for the purpose of filing a petition for removal.

On the facts as they are stated in the record, there appears to be no matter of dispute, or any controversy whatever, between the complainant and the defendant the Joseph Bancroft & Sons Company. On the contrary, it is apparent that their interests in the outcome of the present suit are really the same, and that they are both seeking the same objects, to wit, the return and cancellation of the stock of the Bancroft & Sons Company which has been issued to Bloede, the repayment of the money paid to him for dividends thereon, and an injunction to prevent the payment of any further dividends on that stock. So complete is the identity of interest between the complainant and the Bancroft & Sons Company, there cannot be the slightest doubt that a decree sustaining the bill in every particular would be equally satisfactory to both. In fact, they are, for the purposes of the present suit, joint complainants. There is but one exception, already noted, in the answer of the Bancroft & Sons Company to its uniform admissions of the charges in the bill, and that is in reference to the alleged unauthorized act of the Bancroft & Sons Company in the purchase of the stock of the Victor G. Bloede Company. To this charge, however, the answer makes no denial, and submits the question to the judgment of the court. There is, therefore, no matter of dispute between Hutton and the Bancroft Company.

In opposition to the motion, it was objected by counsel for the complainant that, as Bloede did not appear in the state court save by his solicitor, for the express purpose of obtaining the order of removal, the order should not have been granted, and is therefore invalid. It cannot now be considered an open question that the want of personal service of process will not prevent defendant from entering a special appearance to object to the jurisdiction of the court. The right to petition for the removal of a cause from the state court is conferred on the defendant by a statute of the United States, on the terms and conditions therein prescribed; and it would, in effect, be a deprivation of such right if a defendant was prohibited from making a special appearance as a petitioner for removal merely. The rule of practice that a general appearance is not required for the exercise of that right is abundantly.

sustained by authority, as well as on reason. Harkness v. Hyde, 98 U. S. 476; McGillin v. Claflin, 52 Fed. 657; Baumgardner v. Fertilizer Co., 58 Fed. 1. The motion to remand is denied.