### WHITAKER et al. v. WHITAKER IRON CO. et al.

(District Court, N. D. West Virginia. December 26, 1916.)

1. COURTS ⏍347—EQUITY RULES—REQUISITES OF BILL—SUIT IN INTEREST OF OTHERS.

Where a suit in equity is brought in a federal court, not only in behalf of complainants, but also in the interest of others, under equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv), the names and residences of such others should be alleged in the bill, so that there may be no question that resident interested parties may not by collusion secure jurisdiction by nonresident representation.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⏍347.]

2. COURTS ⊜⇒317—STOCKHOLDER'S SUIT—JURISDICTION—ALIGNMENT OF PARTIES.

In a stockholder's suit in a federal court against the corporation and others, based on a right of action primarily in the corporation, where it is shown that the officers or persons controlling the corporation are opposed to the object sought by the complaining stockholders, the corporation will be aligned with the defendant for jurisdictional purposes.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ⊜⇒317.]

3. COURTS ⊜⇒347—EQUITY RULES—PLEADING—AMENDMENTS.

Under equity rule 19 (198 Fed. xxiii, 115 C. C. A. xxiii), which leaves the allowance of amendments to the discretion of the court, an amendment to a bill may be allowed, although the matter introduced was known to complainant when the original bill was filed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⊜⇒347.]

4. COURTS ⊜⇒347—EQUITY RULES—PLEADING—SUPPLEMENTAL BILL.

An allegation, inter alia, in a supplemental bill, made as a basis for relief not within the scope of the original bill, is not ground for the dismissal or striking out of the supplemental bill, and calls for no action by the court beyond refusing to grant relief based thereon.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⊜⇒347.]

5. COURTS ⊜⇒347—EQUITY RULES—PLEADING—MOTION FOR FURTHER AND BETTER PARTICULARS.

In a suit by minority stockholders, attacking transfers of property by and other acts of the corporation as fraudulent by general allegations, the court may properly grant a motion by defendants, under equity rule 20 (198 Fed. xxiv, 115 C. C. A. xxiv), for "further and better particulars," requiring complainants to set out the ultimate facts relating to the transfers, to the end that the merits of the suit may be more fully presented, and perhaps determined on the pleadings.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⊜⇒347.]

6. CORPORATIONS ⊜⇒211(6)—SUIT BY STOCKHOLDERS—SUFFICIENCY OF BILL.

A bill filed by complainants as stockholders under equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv), against the corporation and others, considered in the light of the corporate records produced at the instance of complainants, *held* to state no cause of action, and dismissed for want of equity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 820, 821; Dec. Dig. ⊜⇒211(6).]

7. WILLS ⊜⇒746—STOCKHOLDER'S SUIT—PERSONS ENTITLED TO MAINTAIN—LEGATEES.

General legatees of a testator, who owned stock of a corporation, do not by devolution take title to such stock, which, in the absence of statute changing the common-law rule or special provision otherwise in the will, the executor has full power to dispose of, and such legatees cannot, as stockholders, maintain a suit against the corporation and others, under equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv), as to transactions occurring prior to distribution of the estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1918–1933; Dec. Dig. ⊜⇒746.]

In Equity. Suit by Martha E. Whitaker, individually and as executrix of the will of Carrie C. Updegraff, deceased, and Ruth E. Whitaker, against the Whitaker Iron Company and others. On motions to dismiss amended and supplemental bills. Motions sustained, and bills dismissed.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Martha E. Whitaker, individually and as executrix of the last will and testament of Carrie C. Updegraff, deceased, and Ruth E. Whitaker, "in their own behalf and for the benefit and in behalf of the defendant Whitaker Iron Company and its stockholders and all parties in interest in like situation with themselves," filed in this court, April 7, 1916, their bill in equity against "the Whitaker Iron Company, Whitaker-Glessner Company, Wheeling Corrugating Company, and Portsmouth Steel Company, West Virginia corporations, Alexander Glass, Albert C. Whitaker, and Sarah F. Whitaker as executors of the last will and testament of Nelson E. Whitaker, deceased, and E. C. Ewing, Alexander Glass, and Albert C. Whitaker, individually and as officers and directors of said corporations above named, "or some of them," in which they allege themselves to be citizens of New York and Delaware, respectively, and the defendants to be corporations and citizens of West Virginia; that plaintiffs at the time of the transactions complained of were and are stockholders in the Whitaker Iron Company, their stock having been held in trust during the lifetime of George P. Whitaker's widow, and the same has now reverted to them by her death; that plaintiff Martha E. Whitaker is executrix of Carrie C. Updegraff and has a life interest in her estate; that plaintiff Ruth E. Whitaker is a "legatee heir" of said decedent, and also of George P. Whitaker, deceased, and entitled to a large interest in the one-fifth share held by his estate in the Whitaker Iron Company, and entitled to distribution by reason of his widow's demise; that George P. Whitaker died in Maryland in 1890, his will was probated there, and Nelson E. Whitaker, Joseph Coudon, and another (who resigned) qualified there as "executor trustees," and his estate has not been judicially settled; that by the terms of his will settlement was suspended during the lifetime of his widow, and Coudon is sole surviving "executor trustee" (Nelson E. Whitaker having died in 1909, his will being probated in West Virginia, where the defendants Sarah F. Whitaker, Alexander Glass, and Albert C. Whitaker have qualified as executors thereunder); that the estate of George P. Whitaker comprised, inter alia, a one-fifth interest in the Whitaker Iron Company, and by his will his estate was divided into five equal parts and given to his five children and their heirs; that Carrie C. Updegraff, Ruth E. Whitaker, Martha M. Whitaker, and Porter Whitaker, as heirs of his deceased son, Henry C. Whitaker, are entitled to a one-fifth share of his estate, including a one twenty-fifth interest in the Whitaker Iron Company; that the Whitaker Iron Company was incorporated in 1875 by George P. Whitaker, the Wheeling Corrugating Company in 1890 by Nelson E. Whitaker, Alexander Glass, his son-in-law, Albert C. Whitaker, his son, and E. C. Ewing and another, the Portsmouth Steel Company in 1902 by the same parties, and the Whitaker-Glessner Company in 1903 by N. E. Whitaker, A. C. Whitaker, Alexander Glass, et al., and all these companies engaged in the manufacture of iron and steel, having an aggregate capitalization of about $15,000,000. It is then charged that Alexander Glass, Nelson E. Whitaker, E. C. Ewing, and Albert C. Whitaker were officers, directors, and controlling stockholders in all or some of these corporations, and particularly in the Whitaker Iron Company and the Wheeling Corrugating Company; that in 1892 the Wheeling Corrugating Company leased itself for 25 years to the Whitaker Iron Company, and on September 17, 1900, it sold and conveyed to the Whitaker Iron Company its plant, lands, buildings, etc., in West Virginia and Ohio for a consideration of $250,000; that the Iron Company held the Corrugating Company for some four years, during which time the profits of the latter were large and due to the Iron Company, and it had used the Iron Company's materials without payment, by reason whereof a large balance is claimed to be due from the Corrugating Company to the Iron Company; that from 1903 to June, 1904, the Corrugating Company and its "officer director controlling stockholders" conspired to defraud and deprive the Iron Company and its other stockholders of the ownership of the Corrugating Company and their right to its earnings, profits, etc., and, without knowledge and consent of other interested stockholders of the Iron Company, secretly secured the execution of a "backdated" reconveyance in 1904, from the Iron Company to the Corrugating Company of all the latter's properties, without consideration or payment, or credit to the Iron Company for its four years' operation, management, right to the

good will, earnings, profits, etc., of the Corrugating Company, and no part of said diverted properties, increases, and accretions thereon and thereto have been restored or credited to the Iron Company. It is then charged that in this retransfer the "officer director and controlling stockholder defendants," to their personal gain, defrauded secretly, and without knowledge of the plaintiffs and other stockholders, the Iron Company and its other stockholders; and the bill attempts to indicate, in six particular items, the extent of the loss and damage of the Iron Company sustained thereby. It is further alleged that the Whitaker-Glessner Company was formed in 1903 with $3,000,-000 capital, and by deed of January 21, 1904, the Whitaker Iron Company conveyed to it its West Virginia properties for a consideration of 16,760 shares, of par value $1,676,000, of the new company's capital stock. It is then alleged that plaintiffs have never ratified or confirmed this scheme to defraud the Iron Company or the unjust results thereof, have made due demands by written notices and in connection with court action in other jurisdictions upon, and gave complete details to, said defendants and all stockholders of the Iron Company and the other corporate defendants and all fiduciaries, and requested and required them, all and every, to join in securing and conserving the full rights and interests of the Iron Company and its stockholders, particularly of said estate of George P. Whitaker and its heirs, but all the defendants have failed, neglected, and refused so to do, or to take any action in the premises; that "plaintiffs have commenced and prosecute this action through compulsion, on their own behalf and in behalf of the Whitaker Iron Company and its stockholders, and all persons who may be similarly situated as themselves in the premises, and more particularly to protect the interests and rights of the estate of George P. Whitaker, deceased, and its heirs, including themselves, because of the neglect, refusal, and omission of one Joseph Coudon, the sole surviving executor trustee, to take proper action in re after due notice."

The prayers of the bill are numerous, and in the alternative to the effect that the court uphold the conveyance of the Corrugating Company to the Iron Company and annul the conveyance of the latter back to the former, or that the Corrugating Company be held to hold its property in trust for the Iron Company, or require the Corrugating Company to repay to the Iron Company the purchase price paid by it, with interest, and hold the defendants liable therefor, declaring the Iron Company to have owned the property from September 17, 1900, to June 4, 1904, and entitled to all thereof, together with the good will, use, earnings, etc., therefrom, and requiring an accounting thereof; that the Corrugating Company and the Whitaker-Glessner Company, their officers, etc., make discovery and accountings for the 16,760 shares of the latter Company paid for the Whitaker Iron Company's West Virginia properties, and all dividends, rights, accretions thereon, and the same as to the Iron Company's share in the purchase price of its interest in the Portsmouth Steel Company; that defendants make complete discovery and accountings in the premises; that defendants be required to set forth a complete list and description of every date, book, account, record, and writing of whatsoever nature, relating to these matters, and deposit same in the clerk's office of this court; that the defendants be required to account individually for all their dealings and transactions in the premises; and that, pending litigation, some one be appointed to manage the affairs of the Corrugating Company, and all parties be enjoined from interference with such management.

On May 18, 1916, defendants' solicitors entered appearance to this bill, and on May 27, 1916, filed a motion on behalf of all the defendants to dismiss it for (1) failure to comply with equity rule 25; (2) failure to comply with equity rule 27; (3) want of that diversity of citizenship upon which the jurisdiction of this court is invoked, and upon which it must depend; (4) want of equity; (5) laches; (6) because of other defects apparent upon its face. On June 2, 1916, the plaintiffs filed in the clerk's office an amended bill. This amended bill, putting aside verbal and paragraph changes, and arrangements and amplifications of the charges of conspiracy to defraud, and increases in the statements of values and the sums claimed as damages, profits, etc., is but a reiteration of the original. It "prays leave to join Joseph Coudon, of Maryland, in-

dividually, as executor trustee of George P. Whitaker, deceased, and as an officer or director of the Whitaker Iron Company, also all other necessary or proper parties, if any." It further alleges that "since the filing of the bill herein, with full knowledge and notice of this pending action, the defendants herein made and recorded a further deed from said Wheeling Corrugating Company to said Whitaker-Glessner Company, apparently conveying, inter alia, to the latter company said same properties described in the aforesaid deed of September 17, 1900," and, in its prayer, asks the cancellation thereof.

On June 12, 1916, all the defendants, other than Joseph Coudon, not served, filed written motions: (a) To dismiss plaintiff's amended bill; (b) to strike said amended bill from the files; (c) for further and better particulars in writing of certain matters stated in plaintiffs' bill; and (d) for further and better particulars in writing of certain matters stated in plaintiffs' amended bill. The grounds set forth in the motion to dismiss the amended bill are: (1) Because in making "Joseph Coudon, of Maryland, individually, as executor trustee of George P. Whitaker, deceased, and as an officer or director of said Whitaker Iron Company," a defendant, plaintiffs violated equity rule 28 [198 Fed. xxvi, 115 C. C. A. xxvi], inasmuch as his interest was known to plaintiffs when their original bill was filed. (2) Because in making Joseph Coudon, of Maryland, a defendant, plaintiffs ask of this court that for which there is no law, inasmuch as he is a nonresident of this district, and there is no provision of law by which he could be summoned to appear and make defense. (3) Because by setting up the making of the deed of the Corrugating Company to the Whitaker-Glessner Company, and seeking its cancellation, plaintiffs are seeking relief upon matters arising after the filing of their original bill, and have thereby violated equity rule 19 [198 Fed. xxiii, 115 C. C. A. xxiii]; and (4) have thereby made an essential change in the character and objects of the original suit in violation of equity rules 19 [198 Fed. xxiii, 115 C. C. A. xxiii] and 34 [198 Fed. xxviii, 115 C. C. A. xxviii]; and (5) seek to assert a liability against the Whitaker-Glessner Company and Wheeling Corrugating Company only, and not against all of the material defendants to the original suit, in violation of equity rule 26 [198 Fed. xxv, 115 C. C. A. xxv]. (6) Because in their amended bill plaintiffs have not complied with equity rule 25 [198 Fed. xxv, 115 C. C. A. xxv]; nor (7) with equity rule 27 [198 Fed. xxv, 115 C. C. A. xxv]. (8) Because of want of that diversity of citizenship upon which the jurisdiction of this court in this cause is invoked, and upon which it must depend. (9) For want of equity; and (10) for laches.

The grounds alleged in support of the motion to strike from the files the amended bill are: (1) Because, after pleading filed by defendants on May 27, 1916, plaintiffs filed this amended bill without the consent of the defendants, or leave of the court or judge, whereby equity rule 28 [198 Fed. xxvi, 115 C. C. A. xxvi] was violated; and (2) because, while alleging facts occurring after the filing of plaintiffs' bill, the plaintiffs in filing their amended bill, if it be considered as supplemental pleading, violated equity rule 34 [198 Fed. xxviii, 115 C. C. A. xxviii].

The two motions for "further and better particulars in writing" of certain matters stated in plaintiffs' bill and amended bill are based upon equity rule 20 [198 Fed. xxiv, 115 C. C. A. xxiv]. They ask that plaintiffs be required to state: (1) The exact number of shares of the capital stock of the Whitaker Iron Company owned by George P. Whitaker at the date of his death, and by his estate thereafter, showing separately all dividends, cash or stock, received by said estate, and its disposition of such stock, all other receipts by the estate from said company of property and assets distributed in kind by it to its stockholders, and what each plaintiff, and those claiming under them, have received in cash or stock, and of such dividends, and out of the principal holdings of the estate, in shares of the capital stock of the Whitaker Iron Company, and in distribution of the property and assets of said company, and when and what disposition, from time to time, plaintiffs, or those claiming under them, have made of such stock, property, or assets so received; also to state when and how, and to what extent, in shares of the capital stock thereof, plaintiffs, or those claiming under them, became and continued stockholders in the Whitaker-Glessner Company, their stock being held in trust during the lifetime of

George P. Whitaker's widow, and having reverted to plaintiffs by her death as charged in the amended bill; and also so as to state in what manner and to what extent plaintiffs, through said Whitaker-Glessner Company, are interested in all of the corporate defendants, stated separately as to each corporate defendant. (2) So as to state the name and place of residence, so far as plaintiffs may be informed, of each of the heirs of George P. Whitaker, deceased, interested in the trust created by his will referred to in both bills. (3) So as to state the name and place of residence, so far as plaintiffs are informed and believe, the names of the corporators, stated separately, of the Whitaker Iron Company, the Wheeling Corrugating Company, the Portsmouth Steel Company, and Whitaker-Glessner Company. (4) So as to state, with particularity, the official position, either as officer or director, and his ownership of stock in the Whitaker Iron Company, the Wheeling Corrugating Company, and the Whitaker-Glessner Company, of Alexander Glass, Nelson E. Whitaker, E. C. Ewing, and Albert C. Whitaker, at each and all times mentioned in paragraph IX of amended bill. (5) So as to state, upon plaintiffs' information and belief, the profits of the Wheeling Corrugating Company during the four years mentioned, and so as to state the years the Corrugating Company used the Iron Company's materials without payment, and what materials are referred to. (6) Referring to paragraph XI of the amended bill and paragraph X of original bill, so as to state the facts and not the conclusion of the pleader upon the several subjects, and the times and occasions referred to, and so as to state the name of each of the "officer director controlling stockholders" of the four corporate defendants, stated separately, charged with the doing of the acts described therein, and also so as to state the entire facts about said whole proceeding mentioned therein and, according to the best of the knowledge, information, and belief of plaintiffs, giving the names of the "said official majority as individuals" as to each company on each occasion. (7) So as to state the facts, and not the conclusion of the pleader, upon the subjects mentioned in paragraph XII, amended bill, giving names of the "other interested stockholders" of the Iron Company, the names of the defendants who met, and what plans and designs they concerted; so as to state who agreed to procure the "back-dated reconveyance," when and where and who agreed to divest "other valuable rights and properties" of the Iron Company from said Company, and divide same among themselves to their individual personal profit at the corresponding loss of the Whitaker Iron Company and its other stockholders. (8) Paragraph XIII (amended bill), so as to state facts, and not conclusions of pleader, as to matters therein mentioned, and give names of defendants charged with acts set forth therein. (9) Paragraph XIV (amended bill), so as to state the entire facts relative to the transaction, the particular properties of the Iron Company included therein, with the inventoried values thereof, what disposition the Iron Company made of the 16,760 shares of Whitaker-Glessner Company stock received by it, and so as to state what of said proceeds of shares of stock Geo. P. Whitaker's estate received in partial distribution by the Iron Company of part of its property and assets in kind amongst its stockholders, and also so as to state what of that stock each plaintiff, or those claiming under them, received from said trust estate, and when, and what disposition thereof, from time to time, plaintiffs, or those claiming under them, have made. (10) Paragraph XV (amended bill), so as to state the facts, and not the conclusion of the pleader, to name each of the "officer director and controlling stockholder defendants" charged, to state what "properties and accretions thereto" of the Iron Company have not been "restored or credited to said Whitaker Iron Company" and have been wrongfully retained by the individual defendants charged, and stating the names of such individual defendants, what they received, and what they severally wrongfully retain. (11) Paragraph XVI (amended bill), so as to state the facts, and not the conclusion of the pleader, as to the matters therein mentioned, and so as to state the names of the "other stockholders" of the Iron Company without whose knowledge, consent, and authority the deed of reconveyance from the Iron Company to the Corrugating Company was made, and so as to state what alleged secret corporate meetings, agreements, consents, and resolutions are referred to, and when said corporate meetings

were held, and who participated therein. (12) Paragraph XVII (amended bill), so as to state the names of the defendants who made and recorded the "further" deed from the Corrugating Company to the Whitaker-Glessner Company, the properties described in the deed of September 17, 1900, and said "reconveyance deed," which are "apparently" conveyed by said "further" deed, so as to state the names of "said individual defendants" charged to "further profit greatly" by such "new transfer," and how and to what extent they severally profit, stated separately as to each, and wherein the Iron Company and its stockholders suffered such loss and injury, and of what such loss and injury consists as to each of such "other stockholders." (13) Paragraph XVIII (amended bill), so as to state the facts, and not the conclusion of the pleader, so as to state the name of each of the "individual defendants" thereby charged to have unlawfully and personally profited in the stock, etc., diverted from the Iron Company and its other stockholders, particularly said estate of Geo. P. Whitaker and its heirs, and stating by what stock, and the number of shares thereof, what moneys, and the amounts thereof, what properties, and what money's worth, belonging to the Iron Company, each of the "individual defendants," the Corrugating Company, the Whitaker-Glessner Company, and the Portsmouth Steel Company, stated separately, have so unlawfully profited; and so as to state with particularity whereby and wherein and to what extent said estate of George P. Whitaker and its heirs and plaintiffs suffered.

On June 20, 1916, a hearing was had upon these several motions, in chambers at Parkersburg, where arguments of counsel were heard, the plaintiffs moved for leave to file the amended bill (filed without leave of the court) nunc pro tunc, and the defendants (other than Coudon not served) filed, in support of their motions "for further and better particulars" (plaintiffs, by counsel, objecting to the filing thereof), a "statement of facts as they are and as they were known to plaintiffs and to plaintiffs' counsel before the bringing of this suit," supported by 60 exhibits—consisting of transcripts from the minutes of the Whitaker Iron Company (Nos. 1 to 14, inclusive, certified to by the president and secretary and under seal of the company); transcripts from the minutes of the Wheeling Corrugating Company (Nos. 15 to 18, inclusive, certified to by its president and secretary under its seal); financial statements, lists of stockholders, record of stock transfers, and individual stockholders' accounts of the Whitaker Iron Company and the Wheeling Corrugating Company (Nos. 19 to 38, inclusive, certified to, under seals of these companies, by the secretary of the former and the treasurer of the latter); call for and notice of special general meeting of stockholders of Whitaker-Glessner Company, dated June 18, 1913 (No. 39); alleged copy of contract, of date July 8, 1913, between Martha E. Whitaker, executrix of Carrie C. Updegraff, and Ruth E. Whitaker, of the first, and Louis Gutman, W. L. Glessner, A. C. Whitaker, E. C. Ewing, and Alex. Glass, of the second, part, whereby the parties of the first sell to the parties of the second, upon terms and conditions set forth, 282 shares held by said Martha E. Whitaker as executrix, and 94 shares held by Ruth E. Whitaker individually, of the capital stock of the Whitaker-Glessner Company (No. 40); call for and notice of a special general meeting of stockholders of the Whitaker-Glessner Company, dated March 30, 1916 (No. 41); copies of correspondence between counsel for plaintiffs, with defendant Alex. Glass and one of counsel for defendants (No. 42 to 59, inclusive); and notice given by and affidavit of counsel for plaintiffs (No. 60)—all of which exhibits appear to sustain said "statement of facts," which is as follows:

"In 1900 the Whitaker Iron Company acquired the Wheeling Corrugating Company for $250,000 in Whitaker Iron Company stock. In doing that two distinct methods were used—one by which the Wheeling Corrugating Company conveyed its property and assets to the Whitaker Iron Company, which assumed payment of the liabilities of the Wheeling Corrugating Company; and the other by which the individual stockholders of the Wheeling Corrugating Company assigned and delivered their stock to the Whitaker Iron Company and received in return $250,000 in Whitaker Iron Company stock. Thus the Whitaker Iron Company became the owner of all the property and assets,

as well as the entire capital stock, of the Wheeling Corrugating Company. From the time of that transfer in 1900 to near the close of 1904, the business of the Wheeling Corrugating Company was conducted by the Wheeling Corrugating Company in its own name, as the business had theretofore been conducted; but its entire capital stock, consisting of 2,255 shares, was owned by the Whitaker Iron Company and voted at stockholders' meetings of the Wheeling Corrugating Company by said Whitaker Iron Company, except 6 shares, which by action of that company's board of directors September 26, 1900, were transferred to six different persons, so as to qualify them to serve as directors of the Wheeling Corrugating Company.

"Toward the close of 1904 the Whitaker Iron Company, together with the Laughlin Nail Company, entered into an arrangement for the organization of the Whitaker-Glessner Company, whereby a certain plant of the Whitaker Iron Company, then an operating company, in Wheeling, was to be transferred to the Whitaker-Glessner Company, and a certain other plant of the Laughlin Nail Company, then an operating company in Martin's Ferry, Ohio, was to be transferred to the Whitaker-Glessner Company. In addition to its plant in Wheeling the Whitaker Iron Company agreed to transfer to the Whitaker-Glessner Company 2,255 shares of the capital stock of the Wheeling Corrugating Company, and to sell to the Whitaker-Glessner Company the good will of said Wheeling Corrugating Company. At that time the Whitaker Iron Company was the owner of all of the capital stock of the Wheeling Corrugating Company aside from the 6 qualifying shares mentioned, and also held the legal title to all the property and assets of the Wheeling Corrugating Company. When said property came to be appraised by the interests of the Laughlin Nail Company, the other party to the formation of the Whitaker-Glessner Company, it was noticed that the Wheeling Corrugating Company had divested itself of all its property and assets by its transfer to the Whitaker Iron Company in 1900, but that the Whitaker Iron Company was also the holder of all of the capital stock of said Wheeling Corrugating Company. Thereupon, to give to the 2,255 shares of Wheeling Corrugating Company stock the value of $1,322,900.79, and its good will the value of $255,200, at which they were being sold to the Whitaker-Glessner Company by the Whitaker Iron Company, the Whitaker Iron Company and the Wheeling Corrugating Company, by unanimous vote of their stockholders and by action of their respective boards of directors, rescinded the action whereby the Wheeling Corrugating Company conveyed its property and assets to the Whitaker Iron Company, as was done in 1900; but the acquisition of the capital stock of the Wheeling Corrugating Company by the Whitaker Iron Company, in 1900, as the other method adopted to acquire the Wheeling Corrugating Company, was ratified and confirmed, and, following such corporate action in 1904 by the two corporations interested, the Whitaker Iron Company conveyed, and the Wheeling Corrugating Company received back, the same property that had been conveyed in 1900.

"From the time in 1900 when the Whitaker Iron Company bought the Wheeling Corrugating Company for $250,000 in Whitaker Iron Company stock to the time in 1904 when the Whitaker Iron Company made the reconveyance to the Wheeling Corrugating Company the net earnings of the Wheeling Corrugating Company had been allowed to accumulate; and this caused it to come about that in the formation of the Whitaker-Glessner Company the Whitaker Iron Company received for the 2,255 shares of the capital stock of the Wheeling Corrugating Company and for the good will of the Wheeling Corrugating Company the sum of $1,676,000, which was paid to it by the Whitaker-Glessner Company in 16,760 shares of the capital stock of the Whitaker-Glessner Company, of a par value of $100 per share. The Whitaker Iron Company disposed of its 16,760 shares of Whitaker-Glessner Company stock on January 27, 1904, by ordering a distribution in kind amongst its own stockholders of shares of Whitaker-Glessner Company stock equivalent to a 300 per cent. dividend on its own $500,000 capital stock, making 15,000 shares, and delivered in pledge 1,500 other shares to Robert C. Dalzell, as trustee, as collateral to secure the bonds of the Portsmouth Steel Company, then a sub-

sidiary corporation, and retained in its own treasury 260 other shares, thus making the total of 16,760 shares.

"Pursuant to ordering the distribution to its own stockholders of the 15,000 shares of Whitaker-Glessner Company stock January 27, 1904, the Whitaker Iron Company on March 15, 1905, by action of its stockholders and directors, had the Whitaker-Glessner Company issue and deliver the 15,000 shares direct to and amongst the said stockholders of the Whitaker Iron Company, according to their respective interests, and in that distribution the estate of George P. Whitaker received 1,500 shares, that number of shares being the equivalent of a 300 per cent. dividend upon the 500 shares of Whitaker Iron Company stock the estate then owned. This holding of 1,500 shares of Whitaker-Glessner Company stock by the George P. Whitaker estate was increased 750 shares by a 50 per cent. stock dividend declared by the Whitaker-Glessner Company April 30, 1910, and thereby that estate came to own 2,250 shares of Whitaker-Glessner Company stock.

"The estate of George P. Whitaker, pursuant to a decree of the circuit court of Cecil county, Md., filed April 17, 1912, in equity cause No. 2913, made a distribution of these identical 2,250 shares of Whitaker-Glessner Company stock, and on June 12, 1912, Martha E. Whitaker, as executrix of Carrie C. Updegraff's will, received from said estate 282 shares of Whitaker-Glessner Company stock, her full distributive share, and on June 12, 1912, Ruth E. Whitaker received from said estate 94 shares of Whitaker-Glessner Company stock, likewise her full distributive share. The estate of George P. Whitaker, deceased, is now the owner of 500 shares of stock of the Whitaker Iron Company.

"Martha E. Whitaker, as executrix of the will of Carrie C. Updegraff, deceased, is entitled as one of the plaintiffs to an undivided one-tenth interest in the estate of George P. Whitaker, deceased; Ruth E. Whitaker, the other plaintiff, is entitled to an undivided one-thirtieth interest in the estate of George P. Whitaker, deceased; together plaintiffs are entitled to an undivided four-thirtieths interest in the estate of George P. Whitaker, deceased. But neither plaintiff is a stockholder in the Whitaker Iron Company, the Whitaker-Glessner Company, the Wheeling Corrugating Company, nor the Portsmouth Steel Company."

On August 1, 1916, this court entered an order, sustaining defendant's motions for further and better particulars to the extent of requiring plaintiffs to show the character and extent of the stock holdings, if any held by them, or those under whom they claim, in the Whitaker Iron Company at the time the corporate transactions complained of occurred, reserving all other questions involved in these motions, and requiring plaintiffs to file such statement in the clerk's office on or before September 5, 1916, under penalty of dismissal of the bills without further order. Reasons for this order were set forth in a written memorandum filed by the court and made part of the record.

On August 29, 1916, plaintiffs, in accord with the requirements of this order, filed a recital of particulars, to be added to paragraph V of their amended bill and taken as part thereof, in which they allege that "under equity rule 27, etc., that at all times mentioned in the (amended) bill and in this supplemental bill herein, and at the times of the transactions and happenings of which they complain, namely, from 1891 to date (amended bill V–XV), and prior to and at the commencement of this action, plaintiffs were and they now are shareholders in said defendant Whitaker Iron Company of its capital stock, or that their shares in said stock of said company had devolved on them by operation of law since said transactions and happenings and prior to the commencement of this action." This direct and unqualified allegation of stock ownership is, however, modified by subsequent statements that their stock interests arise through the will and estate of George P. Whitaker, who had five children, Caroline, Nelson E., Cecil, Edmund, and Henry, who died in Indiana in 1868; that said will leaves one-fifth of his estate to the two heirs of his son Henry, who are Carrie C. Updegraff, deceased (represented by plaintiff Martha E. Whitaker as executrix), and George P. Whitaker, Jr.; that George P. Whitaker, Jr., died intestate in Hawaii in 1898; that letters of adminis-

tration have not issued on his estate. It is alleged, however, that it is represented by plaintiff Ruth E. Whitaker as distributee and heir. On September 6, 1916, plaintiff appears to have also filed in the clerk's office of this court what purports to be a copy of the will of George P. Whitaker, deceased, although not authenticated or certified.

On October 2, 1916, defendants (other than Coudon, not served) filed in writing, in the clerk's office, their motion to dismiss the original, amended, and this supplemental statement or bill, for substantially the same reasons set forth in their former motions, and the further one that this supplemental one failed to comply with the court's order of August 1, 1916.

On October 9, 1916, plaintiffs filed in the clerk's office a notice demanding that defendants and their counsel, within eight days, serve upon their counsel at a given address a bill of particulars stating·in detail how and wherein plaintiffs' supplemental bill fails to comply with the court's order of August 1, 1916; and in exactly what respects same fails to comply therewith, and giving notice that plaintiffs object to defendants' motions "re the amended bill and the bill herein as premature, cumulative, and irrelevant, the only matter before the court being the question of jurisdiction."

On October 17, 1916, at Wheeling, at the regular term, a general hearing was had upon all the several motions of plaintiffs, and defendants and the plaintiffs' objection to the consideration of the minute and stock records filed by defendants, upon oral arguments of counsel, their briefs filed, and such hearing was continued until October 21, 1916, for further argument by an absent counsel for defendant, but which on that date was waived, and court took time to consider of its judgment.

Henry A. Brann, Jr., of New York City, for plaintiffs.

George R. E. Gilchrist and John A. Howard, both of Wheeling, W. Va., for defendants.

DAYTON, District Judge (after stating the facts as above). The very earnest insistence of counsel for plaintiffs that their bills herein should be entertained, and the just as earnest contention of counsel for defendants that they should be dismissed, not alone on jurisdictional grounds, but for want of equity, has caused me to make the foregoing statement of the facts and pleadings more extended than was possibly necessary. Upon a final analysis it is clear that plaintiffs, as alleged stockholders, or persons upon whom shares of stock have devolved by operation of law, are seeking redress upon behalf of the corporation, for alleged fraudulent mismanagement, misapplication, and conversion of the corporation's property and assets, by its officers, directors, and majority holding stockholders.

The basis of fact for these serious charges practically reduces itself to this: The Wheeling Corrugating Company in 1900, 16 years ago, sold and conveyed its plant to the Whitaker Iron Company for $250,000. The Iron Company held and operated this plant, so purchased, for 4 years, and then, in 1904, by a "back-dated" deed, reconveyed it to the Corrugating Company, and in that year both companies were merged in the Whitaker-Glessner Company. Based upon these admitted facts, the charges of fraud, misapplication, and conversion are made to the effect that, during the four years' operation by the Iron Company of the Corrugating Company, the profits earned by the latter were large and were not accounted for to the Iron Company; that material of the Iron Company was used and not accounted for to it; that the conveyance back to the Corrugating Company was

without consideration; and that, by the merger with the Whitaker-Glessner Company, other profits, etc., rightly due the Iron Company, were diverted by the individual defendants or some of them.

It is clearly intended to be a "stockholder's bill," as defined by equity rule 27, and must meet its requirements. Before, however, discussing this phase of the case, I think it well to consider some of the other matters arising upon the several motions of defendants to dismiss, strike from the files, and require further and better particulars.

[1] It is insisted that none of these bills comply with new equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv), which takes the place of former rules 20, 21, 22, 23, and 24. Construing this rule in State of Maine Lumber Co. v. Kingfield Co. (D. C.) 218 Fed. 902, Judge Thomas holds that, where plaintiffs set forth that they are "acting, not only in behalf of themselves, but also in behalf of such other creditors of and claimants against the defendants," without more information, without setting forth the names, citizenship, and residence of such parties, the bill violates this rule, and can be dismissed by the court on its own motion, citing Florida C. & P. R. R. Co. v. Bell, 176 U. S. 321, at page 325, 20 Sup. Ct. 399, 44 L. Ed. 486.

This cause is brought by plaintiffs "in their own behalf and for the benefit and in behalf of the defendant Whitaker Iron Company and its stockholders and all parties in interest in like situation with themselves." The Iron Company is a West Virginia corporation, and a reasonable inference may be drawn that some of its stockholders, in whose interest and behalf this suit is brought, as set forth in the above allegation of the bill, are citizens of this state. Jurisdiction in federal courts, where no federal question is raised, will never be presumed, but must be clearly shown. If the suit is brought in the interest of others, their names and residences should be alleged, so that there may be no question that resident interested parties may not by collusion secure jurisdiction by nonresident representation.

[2] Defendants' counsel go farther, and insist that want of diversity of citizenship is affirmatively shown, by reason of the fact that the suit is brought on behalf of the Iron Company, an admitted West Virginia corporation; that it should therefore be properly aligned as a plaintiff, and, if so, diversity of citizenship would be destroyed, a simple condition thereby arising of a West Virginia corporation suing its West Virginia officers and stockholders. This contention is not tenable in this case. Street, in his most excellent work on Federal Equity Practice (section 562), disposes of it in this language:

"Inasmuch as these suits are always technically based on a right of action primarily vested in the corporation itself, it has been suggested that, in theory, the corporation ought always to be treated as being in the same right with the actual plaintiff stockholder. But this is untenable. The true rule is apparently found in the proposition that in a suit in equity, instituted by a stockholder in his own name, but upon a right of action existing in his corporation, the stockholder's corporation will be aligned with the defendants whenever the officers or persons controlling the corporation are shown to be opposed to the object sought by the complaining stockholder, and when such opposition does not appear the stockholder's corporation will be aligned with the complainant in the suit. In other words, it is not so much the actual interest in the fruits of the suit that determines the alignment of the par-

ties as it is the position of the corporation as shown in the record"—citing Greenwood v. Freight Co., 105 U. S. 13, 26 L. Ed. 961; New Jersey Cent. R. Co. v. Mills, 113 U. S. 249, 5 Sup. Ct. 456, 28 L. Ed. 949; Groel v. United Electric Co. (C. C.) 132 Fed. 252; Hutton v. Joseph Bancroft & Sons Co. (C. C.) 77 Fed. 481; and De Neufville v. N. Y., etc., R. Co., 81 Fed. 10, 26 C. C. A. 306, but the last with criticism.

Defendants' counsel further insist that plaintiffs' bills do not meet the requirements of rule 27 as construed by the Supreme Court in Wathen v. Jackson Oil Co., 235 U. S. 635, 35 Sup. Ct. 225, 59 L. Ed. 395. Confining this objection solely to the verification of the bills and the allegations thereof as to plaintiffs' efforts to secure action by the corporation itself, I am inclined to hold this rule sufficiently complied with. Its requirement as regards their stock holdings I propose to consider later on.

[3] By the making of Joseph Coudon, of Maryland, individually, as "executor trustee" of George P. Whitaker, deceased, and as an officer or director of the Whitaker Iron Company, a defendant to the amended bill, it is insisted equity rule 28 has been violated, inasmuch as his (Coudon's) interest was known to plaintiffs when they filed the original bill, and Ross v. Carpenter, Fed. Cas. No. 12,072, is cited. This case, however, was construing rule 29 of the rules of 1842 (subsequently promulgated as No. 29 in the rules of 1866–1911) which provided that a bill was not amendable after replication filed, unless the plaintiff shows that "the matter of the proposed amendment is material, and could not with reasonable diligence have been sooner introduced." This old rule has been entirely superseded by No. 19 of the new rules, which leaves the allowance of amendment wholly to the discretion of the court. I would not be inclined to sustain a dismissal on this ground alone.

It is contended further, in this particular, that in making Coudon a party plaintiffs ask of the court that for which there is no law, as he does not reside in this district, does not appear to be within it, and there is no provision by which he can be summoned to appear and make defense. This contention is sound, but subject to this modification: That while he may not appear to be in the district, yet it does not follow that he may not be found in the district within the time that summons to appear is allowed to run before made returnable by the marshal to the clerk's office. Therefore, if I regarded Coudon as a necessary party, and the right to entertain the cause dependent upon his being served, I would not be inclined to dismiss until process had been issued and returned "not found."

[4, 5] Defendants further contend that, by setting up in the amended bill as a cause of action the making of the deed by the Corrugating Company to the Whitaker-Glessner Company, and asking its cancellation: (a) They are making an essential change in the character and object of the original suit, thereby violating rules 19 and 34; and (b) they are seeking to assert a liability against these two corporation defendants alone, and not against all of the material defendants to the original suit, in violation of rule 26. I think both of these contentions sound. I do not think the remedy, however, would extend beyond a refusal to consider such allegations and to grant relief because

thereof. So far as our American equity practice is concerned, some new and very interesting questions arise upon defendants' motion for further and better particulars, based upon rule 20, which is a new one, adopted from the English one (Order XIX, rule 7), and reads as follows:

"A further and better statement of the nature of the claim or defense, or further and better particulars of any matter stated in any pleading, may in any case be ordered, upon such terms, as to costs and otherwise, as may be just."

It is apparent at once that resort to this rule may very materially aid a litigant in ascertaining what case he has to meet and prevent him from being taken by surprise at the trial. It may be invoked also for the purpose of tying down the party required to give such statement to the actual case he proposes to make, stripped of all otherwise extraneous matters inferable from the general character of his pleading. But the appeal to it here is for a much broader purpose. The defendants substantially assert that plaintiffs in these bills have made general charges of fraud, while if they had stated in detail the ultimate facts, such facts would disclose: (a) That the Iron Company, in acquiring the Corrugating Company, employed two methods, one by having the plant conveyed, the other by having the stockholders sell and transfer to it their stock holdings, whereby it became the holder of the legal title to the physical plant and property of the Corrugating Company, and at the same time became the owner of all of its capital stock, and for both paid one consideration, $250,000 in issues of its own stock; (b) that for a period of four years the two companies operated independently of each other, as they had done before, and the earnings of the Corrugating Company were allowed to accumulate; (c) that when the Whitaker-Glessner Company was formed, in 1904, the Iron Company then sold to it all this capital stock of the Corrugating Company, and, to give such stock the value it was entitled to, made reconveyance to the Corrugating Company of the plant for the same consideration it had paid for it, and received from the Whitaker-Glessner Company, for this stock of the Corrugating Company, 16,760 shares, of the par value of $1,676,000, of the Whitaker-Glessner Company's stock, of which stock, so received, the Iron Company distributed to its individual stockholders 15,000 shares, of which the estate of George P. Whitaker was entitled to and received 1,500; that (d) under court proceedings, in Maryland, where the "executor trustee" of this estate qualified and resided, a distribution in kind was ordered in 1912 of these 1,500 shares, and some other shares which the estate had received, whereby plaintiff Martha E. Whitaker, as executrix, received 282 shares, and the plaintiff Ruth E. Whitaker received 94 shares, these being the full distributive share each was entitled to; and, finally, (e) that in July, 1913, both these plaintiffs sold these shares, so allotted to them, by written contract, to Louis Gutman and others.

To support these assertions, they tender the verified minutes and financial statements of these companies and a copy of the sale contract, of which two originals were executed and each side may be

presumed to possess one, to the filing of all which the plaintiffs object and move to strike out. Is the scope of this equity rule 20 broad enough to permit defendants to bring in the ultimate facts in this way, and seek a speedy dismissal of the suit as a vexatious one, or must they set up these matters in an answer, and await the delay of a regular hearing? So far as I can discover, no decisive construction of the full scope of this rule has been as yet rendered by the courts of this country. Adopted, as it has been, from the English rules, the construction given by the courts of that country must be considered as strongly persuasive. The eighth edition of the old standard English work, Daniell's Chancery Practice (volume 1, at pages 328, 329), discusses the matter, cites authorities, and strongly intimates that the scope of the rule may be as broad as here contended for, always, however, subject to the discretion of the court as to whether particulars shall precede discovery, or discovery precede particulars.

It would seem that such a conclusion is just and right; that while such a broad scope to the rule, in most cases, is not required and should not be allowed, yet in some exceptional ones it should be, in order that injury may not be done and justice may be promoted. I am constrained to believe this case to be such exceptional one, for these reasons:

First—It is to be borne in mind that this is alleged to be a stockholder's suit. The law is well settled, by a vast number of decisions, that such suit can be brought for only a few purposes; that the grievance must be clearly shown to be real and not simulated, calculated to cause irreparable injury, and that every means of redress within the corporation itself has been exhausted, or clearly shown to be unnecessary and futile by reason of hostile control. In the absence of actual fraud, or a breach of trust or duty, courts of equity will never entertain these bills for the purpose of questioning the wisdom or lack of wisdom of sales and transfers of corporate property regularly authorized by the company's stockholders and consummated by its directors, at the instance of minority stockholders asserting that better sales could be secured or that better business policy dictated such sales should not be made. In all these cases, as said by Mr. Justice Wayne, in the leading case of Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401:

"It is obvious, from this rule, that the circumstances of each case must determine the jurisdiction of a court of equity to give the relief sought"—approved in Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827.

When it is considered what injury may, in many instances, be done to the reputation of a going and solvent corporation by reason of having its management assailed by vexatious suits of this character at the instance of minority stockholders, it seems to me to inevitably follow that, before entertaining such a bill, a chancellor should carefully and cautiously investigate the circumstances, and that this rule 20 may be beneficently given its broadest scope to enable him to promptly do so.

[6] Second—In this case the bills clearly disclose that the plaintiffs had no individual right to representation and to participate as stockholders in the corporation at the time the acts complained of were

238 F.—63

consummated. It is admitted that whatever interest they had at that time was solely as heirs and distributees of George P. Whitaker, whose will vested all such interest in a trustee fully vested with power to represent such interest. · No other stockholder, at the time the transfers were made, or for that matter since, has joined them in their complaint or signified any dissatisfaction over the actions taken. It is also clearly apparent from these bills that these plaintiffs profess to have no definite knowledge of the practical effects of the transfers complained of, or of the amounts that they charge the managing officers to have fraudulently realized therefrom. In fact, they are careful to make all these charges of fraudulent misapplication and misappropriation upon information and belief only, and they pray very specifically for discovery from the parties themselves, to the extent of asking:

"That said designated defendants, and the legal representatives thereof, be required to set forth a complete list and description of every date, book, account, record, and writing of whatsoever nature relating to or connected with the aforesaid matters, or any of them, which now are or ever were in their possession or control, or state where same can be found, if removed therefrom, and deposit the same in the office of the clerk of this court for inspection."

Now that the defendants have substantially complied with this prayer, I am not inclined either to reject or refuse to consider these records at the instance of these plaintiffs so asking their production; and in this condition of things I am constrained to believe that only a very few facts drawn from these records will be necessary to show that plaintiffs' charges are groundless and they have no standing in equity. The bill charges that the Iron Company bought the Corrugating Company on September 17, 1900, for $250,000, and that on January 21, 1904, some three years and four months thereafter, the Iron Company "conveyed its West Virginia properties to the former company (Whitaker-Glessner) for a consideration of 16,760 shares of the lattter's capital stock, par value $1,676,000." These records show the fact to be that the Iron Company sold to the Whitaker-Glessner Company the capital stock of the Corrugating Company alone for this price of 16,760 shares, par value $1,676,000, and that 15,-000 'of these shares were distributed in kind to Geo. P. Whitaker's estate, from which plaintiff Martha E. Whitaker, executrix, received 282 shares, and plaintiff Ruth E. Whitaker 94 shares. The contract filed shows that they have sold these shares to Gutman and his associates for $115 per share. Taking the facts admitted by the bill, and supplement them with the few above stated from these supplied records, it is apparent that these officers, directors, and controlling stockholders, so bitterly charged with fraud, mismanagement, and corruption, in fact secured by purchase for their corporation, charged to have been defrauded in the premises, the Corrugating Company for $250,-000, and in less than three years and a half thereafter sold it for more than six times the price given for it, taking in payment stock at par which in fact was worth and was actually sold by these plaintiffs at an advance of $15 on the $100 par value. This purchase and sale of the Corrugating Company, it is to be borne in mind, was consummated

more than a decade ago, when there were no unusual business conditions, such as now exist, to advance prices for such properties. Comment is hardly necessary. It is reasonable to infer, I think, that a good many corporation stockholders in this country would be really delighted to be "defrauded" in this way.

Third—It is well settled that any minority stockholder seeking redress must act promptly. Laches in such matters should always put a chancellor upon guard, and cause him to more carefully ascertain the circumstances and facts before assuming jurisdiction in the premises. Here more than 16 years have elapsed since the purchase was made of the Corrugating Company, more than 12 since the "back-dated reconveyance" and the sale to the Whitaker-Glessner Company was made, and more than 2 years elapsed, after plaintiffs sold their stock, before they instituted this suit.

[7] In the memorandum opinion heretofore filed, I expressed doubt as to whether plaintiffs are entitled to be considered stockholders of the Whitaker Iron Company. I then held that the determination of that question must depend largely upon the terms of George P. Whitaker's will, which was not before me, and upon whether or not plaintiffs held, by any other independent title, shares of stock in the Iron Company. For this reason, I required the supplemental bill or statement to be filed by plaintiffs touching these two points. This supplement discloses that plaintiffs hold no stock other than as distributees of George P. Whitaker's estate, which they claim has devolved by law upon them. Whether this is so or not must depend upon the construction to be given the Whitaker will. An authenticated copy of it is not yet filed in the cause, but what purports to be an unauthenticated copy of it is presented by plaintiffs, which seems to be conceded by defendants to be a true copy. From it, it is clear that testator first directed his stock in the Iron Company, and other personalty to be held in trust for the benefit of his widow and upon her death to go into his residuary estate, which residuary estate was to be divided equally between his five children, but advancements made to and debts owing from these children were to be ascertained from his books and accounted for by each in the distribution. He then adds:

"My sons Henry C. Whitaker and Cecil N. Whitaker being dead, the share of Henry C. I hereby direct to be paid and distributed to his children, Carrie Whitaker and George P. Whitaker, Jr., share and share alike."

Plaintiffs take only through Carrie Whitaker and George P. Whitaker, Jr., and then take only such sum of the whole residuary estate, now in the hands of the Maryland executor and not yet finally settled, as shall remain after the estate has been settled, this stock and other personalty has been reduced to money, and the amounts, if any, that Henry C. Whitaker may have owed his father, the testator, are charged and accounted for. I cannot see, from the terms of this will, the slightest ground for assuming that any shares of the Iron Company's stock, in kind, have or can devolve by law upon plaintiffs, unless, by agreement between them and the executor of the estate, they are transferred to and accepted by them in lieu of the money the will gives them. These plaintiffs, not having been stockholders at any

time in the Iron Company, and none of its stock having devolved on them by law, they had no right "to put the wheels of justice in motion and to proceed to the final determination of a cause upon the pleading and evidence" (Railroad Co. v. Adams, 180 U. S. 28, 34, 21 Sup. Ct. 251, 45 L. Ed. 410), show "no standing in a court of equity, no right in himself [themselves] to prosecute this suit," and the cause must therefore be dismissed, not alone on jurisdictional grounds, but finally for want of equity, under authority of Hawes v. Oakland, 104 U. S. 450, 462, 26 L. Ed. 827, Huntington v. Palmer, 104 U. S. 482, 26 L. Ed. 833, Quincy v. Steel Co., 120 U. S. 241, 7 Sup. Ct. 520, 30 L. Ed. 624, Illinois Cent. R. Co. v. Adams, 180 U. S. 28, 34, 21 Sup. Ct. 251, 45 L. Ed. 410, and Venner v. Great Northern Ry., 209 U. S. 24, 34. 28 Sup. Ct. 328, 52 L. Ed. 666.

The Supreme Court, within the last two weeks in Christopher L. Williams, as Receiver, v. John P. Cobb, 242 U. S. 307, 37 Sup. Ct. 115, 61 L. Ed. ——, says:

"At common law * * * an executor has full power, without any special provision of the will that he is administering or order of court, to sell or dispose of the personal assets of the estate, and thereby to pass good title to them. Munteith v. Rahn, 14 Wis. 210; In re Gay, 5 Mass. 419; Leitch v. Wells, 48 N. Y. 585; Perry on Trusts, §§ 225, 809. A sale by an executor, even to himself, is not void, but only voidable at the option of interested persons. Grim's Appeal, 105 Pa. St. 375; Tate v. Dalton, 41 N. C. 562. And if, after such purchase from himself, an executor sells to another, the purchaser from him acquires a good title. Cannon v. Jenkins, 16 N. C. 426."

We have, in West Virginia, no statute changing this common-law rule. It is in full force with us. It is clear, therefore, that the title to George P. Whitaker's stock in the Iron Company vested and remains in Coudon, his executor.

3. BANKRUPTCY ⬳293(1)—TRUSTEES—RIGHTS OF—PLENARY SUIT.
    Bankr. Act July 1, 1898, c. 541, § 2, cl. 7, 30 Stat. 545 (Comp. St. 1913, § 9586), declares that courts of bankruptcy shall have jurisdiction to cause

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes